**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ROBERT W. JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-300-SLR |
| | ) | |
| STANLEY W. TAYLOR, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS RESPONSE TO PLAINTIFF'S MOTION FOR DISCOVERY**

A.  Instructions

    1.  For the purposes of this Discovery Request, the terms "documents" and "reports" are intended to include-without limitation- any and all written, typed, printed recorded, graphic, or computer-generated material, or other material of any kind from which information can be derived, whether produced, reproduced, or stored on paper, cards, tapes, film, electronic facsimiles, computer storage devices, or any other medium. The terms include- without limitation- letters, memoranda (including internal memoranda), calendars, schedules, books, indices, note, printed forms, publications, press releases, notices, minutes, summaries, abstracts, reports, files, transcripts, computer tapes, printouts, drawings, photographs, recordings (video or audio), telegrams, and telefax messages, as well as any reproductions thereof that differ in any way from any other reproduction, such as copies containing notes and/or other marginalia.

    2.  If any records or documents pertaining to this request are withheld for any reason, please make an inventory and complete copy of the withheld records; provide us with a copy of the inventory, as well as the specific reason for non-disclosure of each

item; and preserve a complete copy to enable subsequent judicial review. See Fed.R. Civ. P. 26(b)(5) ("When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to asses the applicability of the privilege or protection.").

B.  Discovery Requests

  3.  A copy of the current execution protocol used by Defendants to carry out an execution by lethal injection.

Response: See document production (D.I. 16).

  4.  A copy of all prior execution protocols used by Defendants to carry out an execution by lethal injection.

Response: See document production (D.I. 16).

  5.  Copies of any and all documents maintained by Defendants related to lethal injection and its administration, including, but not limited to, all DOC regulations describing all aspects of the administration of the current lethal injection protocol.

Response: Objection. The request is overly broad, unduly burdensome, and not likely to

lead to the production of discoverable material. By way of further response, see document production (D.I. 16).

6. Any and all documents relating to the administration of lethal injection that describe any revisions in the process from its inception to the present, including, but not limited to, the process for revising the lethal injection protocols and who may make such revisions;

Response: See document production (D.I. 16).

7. Copies of all autopsy reports for each execution accomplished by lethal injection from its inception to date, including all photographs, lab work, bench notes, or other writings generated by those who performed or assisted in autopsies.

Response: Defendants are in the process of obtaining autopsy reports and intend to provide those upon receipt. As to the request for autopsy photographs, there are a total of 433 slides. Defendants object to production of all of these photos on the basis that the request is unduly burdensome, overly broad, and not likely to lead to the production of discoverable materials. Defendants will make the slides available for visual inspection by counsel, who may then select, for reproduction at the expense of Plaintiff, a representative slide or slides of each autopsy for production.

8. Copies of any and all reports, records, or other documents, in any form, pertaining in any way to toxicology screens conducted upon any inmate executed by lethal injection.

Response: See response to request #7.

9. Any and all documents describing the amounts and concentrations of all chemical substances used during the execution by lethal injection, including any factors taken into consideration by the DOC in determining the dosage of the chemicals to be used, including but not limited to: the weight, age or physical condition of the inmate; any medications the inmate may have taken prior to commencement of the execution procedure; and the relation between the timing of the lethal injection and the time and quantity of food last ingested by the inmate.

Response: See document production (D.I. 16). By way of further answer, the weight, age, physical condition of the inmate and last meal are not factors in the dosage of chemicals in the lethal injection procedure. All inmates executed in Delaware by lethal injection have received the same combination and quantity of drugs.

10. Any and all DOC documents regarding the actual execution by lethal injection- including all preparations before the execution, and all autopsies after execution- for all executions by lethal injection carried out by Defendants, beginning with the execution of Steven Brian Pennell on March 14, 1992, up to and including the

execution of Brian D. Steckel on November 4, 2005.

Response: See document production (D.I. 16).

    11.    a.)    Any and all documents that describe the execution team for all past executions and any future executions, including, but not limited to, an anonymous description of each participant involved in the administration of the lethal injection procedure (names may be redacted for privacy), whether each participant is a DOC staff member, the job title or profession of each participant, the responsibilities of each participant with regard to the lethal injection procedure, the credentials of each participant, and a description of the extent of medical training, if any, of each of the participants.

Response: No such documents exist.

    b.)    Alternatively, if no such documents exist, Plaintiff propounds the following interrogatory: Please describe each member of the execution team for all past executions and any future executions, including, but not limited to, an anonymous description of each participant involved in the administration of the lethal injection procedure (names may be redacted for privacy), whether each participant is a DOC staff member, the job title or profession of each participant, the responsibilities of each participant with regard to the lethal injection procedure, the credentials of each participant, and a description of the extent of medical training, if any, of each of the

participants.

Response: (1) Warden Thomas Carroll.  Warden Carroll has been an employee of the Department of Correction since April 1, 1980.  He has held the positions of Correctional Counselor, Inmate Classification Officer, Training Administrator II, Warden I of Morris Community Correctional Center, Warden of Webb Correctional Facility, and Warden V of the Delaware Correctional Center (10/1/01 through present).  He holds a B.S. in criminal justice from the University of Delaware (1977), and a Master's degree in Sociology also from the University of Delaware (1984).  He has participated in all executions that Delaware has carried out since 1992 in varying capacities, and he supervised the execution by lethal injection of Brian Steckel in 2005.

Upon receipt of an execution order from Superior Court, Warden Carroll meets with his Deputy Wardens and senior staff.  Thirty days from the date of execution, preparations for the execution begin, pursuant to existing regulations.  The Warden personally meets with the condemned inmate and completes documents regarding the inmate's attorney of record, visitors, inmate's witnesses to the execution, religious affiliation, final meal, contact with the news media, disposal of personal effects, and responsibility for final remains.  The Warden is in the execution chamber with the condemned, and in accordance with written procedures, gives the order to commence the execution.

(2) Deputy Warden Elizabeth Burris.  She has been employed by the Department of Correction since December 1983.  She has served in the capacities of Administrative Officer I and II, Support Services Manager, and Deputy Warden II.  All these positions

have been at the Delaware Correctional Center. She has held the position of Deputy Warden since January 1999. She holds a B.S. in business education from the University of Delaware (1975). She has participated in all executions that Delaware has carried out since 1992.

    (3) Deputy Warden David Pierce, Jr. He has been employed by the Department of Correction since January 29, 1996. He has held the positions of correctional officer, correctional corporal, correctional sergeant, correctional lieutenant, staff lieutenant, and Deputy Warden I. He has held these positions at the Delaware Correctional Center, Sussex Correctional Institution, Sussex Community Correctional Center, and Central Violation of Probation Center.

    (4) John Doe I. Doe I is a certified paramedic with 21 years of experience. Doe I is a Field Training Officer who sets more than 200 IV's per year.

    (5) John Doe II is a retired paramedic with 26 years of experience.

Does I and II prepare the IV lines to the arms of the condemned inmate, and at the direction of the Warden and pursuant to existing DOC regulations, administer the syringes of Sodium Pentothal, Pavulon, and Potassium Chloride.

    12.    Any and all documents from the DOC relating to the standard of care for inmate patients requiring surgery, including any contracts with any medical providers, the names of any company or individual anesthesiologists retained for such surgical procedures, the qualifications of such anesthesiologists, and whether inmates on death row are subject to a different standard of care from other inmates.

Response: Objection. The request is overly broad, unduly burdensome, and not calculated to lead to the production of discoverable materials. By way of further answer, inmates on death row are not subject to a different standard of care from other inmates. The DOC presently contracts with Correctional Medical Services ("CMS") for the medical treatment of inmates. DOC does not retain any specific doctors.

13. Any other notes (printed, typed or handwritten), reports, statements, photographs, supplemental reports, initial reports, memoranda, scientific reports, tapes of statements, interview notes, interview summaries, narratives, affidavits, files, audio and video recordings, drawings, sketches, physical evidence, inventory logs, chronologies, summaries, witness statements, witness interviews and witness affidavits that are responsive to the forgoing requests; alternatively, a list of the responsive documents and a supporting authority for its non-disclosure.

Response: Defendants have no additional documents responsive to this request that are not already included in the document production related to the preceding discovery requests.

14. In addition to the above-listed documents, Plaintiff requests that counsel be permitted to tour the execution chamber at the Delaware Correctional Center in Smyrna and to take photographs and video footage of the execution chamber, the lethal injection facilities, and any other areas or materials related to the administration of the lethal injection procedure. See Fed.R.Civ.P.34; 26(a)(5).

Response:  Defendants have offered to provide Plaintiff's counsel with a tour of the execution chamber, as well as providing photographs of the area.  Plaintiff's counsel has added a condition to the tour that it include the Plaintiff's expert witness.  Defendants do not agree to this condition, or that Plaintiff's counsel be permitted to bring in their own photo or video equipment.  Defendants are otherwise prepared to provide Plaintiff's counsel with a tour of the execution chamber and related areas.

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

/s/_____
Gregory E. Smith, ID # 3869
Deputy Attorney General
820 North French Street, 6th Floor
Carvel State Building
Wilmington, Delaware 19801
(302) 577-8398

**CERTIFICATION OF SERVICE**

The undersigned certifies that on October 4, 2006, he electronically filed the attached *Defendants' Response to Plaintiff's Motion for Discovery* with the Clerk of Court using CM/ECF which will send notification of such filing to the following registered participant:

    Michael Wiseman, Esq.
    Assistant Federal Defender
    Suite 545 West—The Curtis Center
    Philadelphia, PA  19106
    Attorney for Robert Jackson

    STATE OF DELAWARE
    DEPARTMENT OF JUSTICE

    /s/_____
    Gregory E. Smith, ID # 3869
    Deputy Attorney General
    820 North French Street, 6th Floor
    Carvel State Building
    Wilmington, Delaware 19801
    (302) 577-8398