IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROBERT W. JACKSON, III, | Civil Action No. 06-CV-300 |
| Plaintiff, | |
| -against- | **Chief Judge Sue L. Robinson** |
| STANLEY W. TAYLOR, JR., Commissioner, Delaware Department of Correction; THOMAS L. CARROLL, Warden, Delaware Correctional Center; PAUL HOWARD, Bureau Chief, Delaware Bureau of Prisons; and OTHER UNKNOWN STATE ACTORS RESPONSIBLE FOR AND PARTICIPATING IN THE CARRYING OUT OF PLAINTIFF'S EXECUTION, All in their Individual and Official Capacities, | **Electronically Filed** **CLASS ACTION** |
| Defendants. | |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Maureen Kearney Rowley
Chief Federal Defender
By: Michael Wiseman
Helen Marino
Megan McCracken
Assistant Federal Defenders
Federal Community Defender
for the Eastern District of Pennsylvania
Capital Habeas Corpus Unit
Suite 545 West – The Curtis Center
601 Walnut Street
Philadelphia, PA 19106
215-928-0520
Counsel for Plaintiff
Robert W. Jackson, III

Dated: Wilmington, DE
December 1, 2006

**PRELIMINARY STATEMENT**

Pending before the Court is Plaintiff's civil rights lawsuit challenging certain aspects of Defendants' methods for carrying out lethal injections as violative of the Eighth Amendment to the United States Constitution.

Pursuant to this Court's scheduling order, Plaintiff hereby files this Memorandum in Support of his accompanying Motion for Class Certification.[1]

**INTRODUCTION**

This action is brought by a Delaware death-row prisoner seeking an injunction pursuant to 42 U.S.C. § 1983 preventing Defendants from carrying out his execution in a manner that is all but certain to violate his right under the Eighth Amendment to be free from cruel and unusual punishment.

Plaintiff seeks certification of a state-wide class before this Court. Such state-wide certification is appropriate because the relief sought is particularly amenable to a single judicial determination. As explained in greater length below, neither joinder of all interested parties, nor separate judicial determinations will serve the interests of the class, the courts, or the State of Delaware. Such certification is appropriate and, indeed, routine in cases such as this one, which seeks injunctive relief based upon the acts or omissions of state actors in the criminal justice setting.

As alleged in the *Complaint*, Defendants' current system for carrying out executions violates the Eighth Amendment because of the chemical agents used; the failure to ensure proper anesthetic depth prior to administration of the lethal chemicals; the lack of proper training and credentials of those charged with carrying out the executions; the absence of appropriate medical personnel to

---

[1] All emphasis herein is added unless otherwise noted. All citations are self-explanatory or are explained.

supervise and carry out the execution; and the limits imposed by the physical layout of the execution chamber. Each of these factors impinges on Delaware's current capacity to carry out an execution in a constitutional manner.

As explained below, because resolution of the issues set forth in the *Complaint* turn on common, if not identical, questions of law and fact, this case is the paradigmatic model for a state-wide class action.

## ARGUMENT

**I.    CLASS ACTION CERTIFICATION SHOULD BE GRANTED PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 23(A), (B)(1), AND (B)(2).**

**A.    The Putative Class Meets All Four Requirements of Rule 23(a).**

To be certified, "a class must satisfy the four threshold requirements of Rule 23(a) of the Federal Rules of Civil Procedure: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation." In re: Warfarin Sodium Antitrust Litigation, 212 F.R.D. 231, 246 (D. Del. 2002). The proposed putative class meets all four requirements of Rule 23(a).

First, the fluidity of the proposed class make joinder of each individual member impracticable, if not impossible. Second, all material questions of law and fact are common to the class. Third, the claims of the class representatives are typical, if not identical, to those of the absent class members. Fourth, the class representatives will fairly and adequately protect the interests of each class member.

Generally, civil rights cases, such as this one, are particularly well-suited to class action treatment. Baby Neal v. Casey, 43 F.3d 48, 57 (3d Cir. 1994) (class certification granted in "legion" of civil rights cases); 3A MOORE'S FEDERAL PRACTICE, ¶ 23.02 ("Class action status is particularly

suitable in civil rights actions.") (citing Pearson v. Townsend, 326 F.Supp. 207, 211 (D.SC 1973)). The class action device is also appropriate in the context of public law litigation, such as this case. 3A MOORE'S FEDERAL PRACTICE, ¶ 23.40 (citing Royster v. McGinnis, 332 F.Supp. 973 (S.D.NY 1971)), rev'd on other grounds, 410 U.S. 263 (1973) (prisoner's class action challenged validity of state statute).

The primary reason to certify the class requested in this *Motion*, is that it is indisputably in the interests of the putative class, the Defendants, the courts and the public to arrive at a prompt and definitive resolution of the issues raised in this lawsuit, at a minimum of expense and time to the parties and courts. That can best be accomplished by class certification.

  **1. Due to the Fluidity of the Class, Joinder Is Impracticable If Not Impossible (Rule 23(a)(1))**.

Rule 23's numerosity requirement addresses the "necessity" of class treatment of plaintiffs' claims, Baby Neal, 43 F.3d at 55, and it is met if joinder would be impracticable. Here, due to the fluidity of the class, joinder is not practicable. Although Delaware death row presently stands at 17, its population is fluid, with new members being added on a regular basis. Existing members of the class are periodically deleted by death – natural or otherwise. Still other members leave the class when judicial relief is granted, and some rejoin the class when a new death sentence is imposed.

Indeed, over the course of just the last 12 months, the current population of Delaware's death row has changed dramatically. Two new members were added in February 2006 (Michael R. Manley and David D. Stevenson), while Jack F. Outten, Jr. and Thomas Capano were each removed from the putative class because of judicial relief in September, 2006 and January, 2006, respectively. Thus, the composition of the putative class has changed by about 25 % over the course of the last

calendar year alone.

The requirement that potential class members be so numerous as to make joinder of all members impractical does not establish a rigid minimum number of class members necessary to warrant certification. In re DaimlerChrysler AG Securities Litigation, 216 F.R.D. 291, 295 (D.Del. 2003) (internal citations omitted) (Rather, "joinder of all members need only be impractical, not impossible. Among the factors to consider with respect to the numerosity requirement are (1) the size of the class, (2) the expediency of joinder, and (3) the practicality of multiple lawsuits." ); Deutschman v. Beneficial Corp., 132 F.R.D. 359, 371 (D. Del. 1990) (Rule "23(a)(1) requires that the class be so numerous that joinder of claims is impracticable. There is no **'magic number'** or other standard formula for determining whether joinder is 'impracticable.' Rather, the court makes the determination based upon common sense.").

A putative class of the size and fluidity of Delaware's death row meets the numerosity requirement of Rule 23(a). Manning v. Princeton Consumer Discount Co., Inc., 390 F.Supp. 320 (E.D.Pa. 1975), aff'd, 553 F.2d 102 (3d Cir. 1976) **(certifying class of fourteen)**; Philadelphia Electric Co. v. Anaconda American Brass Co., 43 F.R.D. 452 (E.D.Pa. 1968) (certifying class of twenty five); Fidelis Corporation v. Litton Industries, Inc., 293 F.Supp. 164 (S.D.N.Y. 1968) (certifying class with between 35 and 70 members); Wilson v. Thompson, CV. No. 86-4322, 1987 WL 9655 (E.D.Pa. April 17, 1987) (same – certifying modestly sized class); Frankford Hospital v. Blue Cross of Greater Philadelphia, 67 F.R.D. 643 (E.D.Pa. 1975) (same).

Indeed, it is the impracticability of joinder of a fluid class – such as the proposed putative class addressed by this *Motion* – that is the touchstone of the numerosity requirement. Santiago v. City of Philadelphia, 72 F.R.D. 619 (E.D. Pa. 1976) (certifying class of past, present, and future

detainees of the Philadelphia Youth Study Center); Inmates of Lycoming County Prison v. Strode, 79 F.R.D. 228, 232 (M.D. Pa. 1978) ("joinder is impractical here . . . because we are concerned with future" class members).

Class treatment is "particularly appropriate, indeed, necessary" where, as here, there is a class of **changing membership but constant defining characteristics**. Klein v. Nassau County Medical Center, 347 F.Supp. 496, 499 (E.D.N.Y. 1972); accord Powell v. Ward, 487 F.Supp. 917, 922 (S.D.N.Y. 1980), aff'd as modified, 643 F.2d 924 (2nd Cir. 1980), see also Death Row Prisoners of Pennsylvania v. Ridge, 169 F.R.D. 618, 620-23 (E.D. Pa 1996) (granting class certification to death row death row prisoners challenging aspect of AEDPA's opt-in statute); Hawker v. Consovoy, 198 F.R.D. 619, 620, 634 (D.N.J. 2001) (granting class certification to inmates alleging parole board violations). As one court stated:

> **The fluid composition of a prison population is particularly well-suited for class status, because, although the identity of the individuals involved may change, the nature of the wrong and the basic parameters of the group affected remain constant**.

Dean v. Coughlin, 107 F.R.D. 331, 332-33 (S.D.N.Y. 1985); accord Gerstein v. Pugh, 420 U.S. 103, 110 n.11 (1975).

The logistics of joining all of those interested parties would require large expenditures of time and resources. Moreover, joinder is impracticable due to the isolation, sorely limited resources, lack of access to counsel for a purpose such as this, and likely mental health and/or cognitive impairments of at least some members of the putative class:

> Criminal Justice matters are particularly amenable to class action treatment, since such a device provides a judicial vehicle for the incarcerated **who may be ignorant of their legal rights because of isolation, illness, lack of access to counsel, or illiteracy.**

5

8 NEWBERG ON CLASS ACTIONS (4th ed. 2002) § 25.24 (citing United States ex rel Morgan v. Sielaff, 546 F.2d 218, 222 (1976)); Death Row Prisoners, 169 F.R.D. at 621 (finding joinder impracticable because, inter alia, "the illiteracy, isolation, and mental illness of some of the class members").[2]

The evaluations and opinions of expert witnesses for each side will be crucial to the litigation of the Eighth Amendment issues presented by this litigation. Separate actions would be impracticable because the putative class members, all prisoners on Delaware's death row, are without the resources needed to secure the services of those experts in each individual case, either for the purposes of establishing their own claims or to refute any expert scientific evidence that Defendants may choose to present. Since most, if not all, of the putative class members are indigent, this would place an unnecessary and significant financial burden on the federal courts (should these claims be brought by prisoners already in habeas corpus litigation) and/or on the state courts (should these claims be litigated by pre-trial or post-trial capital prisoners in state court).

Even if such duplicative expenditures were feasible for the putative class members, the commencement of separate actions would place an unnecessary financial and resource burden on the

---

[2] See also Bradley v. Harrelson, 151 F.R.D. 422, 426 (M.D. Ala. 1993) (class certification of mentally ill inmates appropriate, noting that in assessing the practicability of joinder, "the courts should take a common-sense approach which takes into account the objectives of judicial economy and access to the legal system.") (citing 1 NEWBERG ON CLASS ACTIONS (2d ed. 1985) § 3.03); Armstead v. Pingree, 629 F.Supp. 273, 279 (M.D. Fla. 1986) (certification of class of mentally retarded and mentally ill residents of state-owned institution appropriate in view of, inter alia, the putative class' "mental handicaps" because "it is unlikely that separate actions would follow if class treatment were denied. This is precisely the type of group which class treatment was designed to protect." (internal citation omitted)); Adderly v. Wainwright, 58 F.R.D. 389, 392 (M.D. Fla. 1972) (class certification granted "in view of the uncontested allegations and assertions of Petitioners that the inmates of death row are impoverished, unrepresented, ignorant and illiterate").

federal and state courts hearing these separate challenges.[3]

For all of these reasons, the numerosity requirement is satisfied.

### 2. There are Questions of Law and Fact Common to the Class (Rule 23(a)(2)) – Certification of a State-Wide Class is Appropriate.

Rule 23(a)(2) permits class certification if there are "questions of law or fact common to the class." The commonality requirement is "easily met" since all that is needed is "a single common issue," Baby Neal, 43 F.3d at 56, or a "common nucleus of operative facts," Cohen v. Uniroyal, Inc., 77 F.R.D. 685, 690 (E.D. Pa. 1977) (quoting Entin v. Barg, 60 F.R.D. 108, 113 (E.D. Pa. 1974)), or the existence of common questions of law, Gavron v. Blinder Robinson & Co., Inc., 115 F.R.D. 318, 322 (E.D. Pa. 1987).

Conversely, not all questions of law or fact raised need be in common, Weiss v. York Hospital, 745 F.2d 786, 808-09 (3d Cir. 1984), and commonality is not defeated by immaterial differences in class members' positions, Baby Neal, 43 F.3d at 56 ("factual differences among the claims of the putative class members do not defeat certification."); Hassine v. Jeffes, 846 F.2d 169, 176-77 (3d Cir. 1988); Snider v. Upjohn Co., 115 F.R.D. 536, 540 (E.D. Pa. 1987), or by the fact that not all class members have suffered the same injury or any injury at all, Baby Neal, 43 F.3d at 56.

The putative class meets the commonality requirement. The primary issues before this Court are whether a number of aspects of Delaware's method for carrying out lethal injection violate the Eighth Amendment. These questions, in turn, will be determined by a common set of legal and

---

[3] While Plaintiff has no standing to be concerned about the cost to the Defendants of defending separate actions, it cannot escape notice that defending separate actions will obviously consume Defendants time and resources far more than defending one class action.

factual issues, and therefore commonality is present:

> [C]lasses have been certified in a legion of civil rights cases where commonality findings were based primarily on the fact that defendant's conduct is central to the claims of all class members irrespective of their individual circumstances and the disparate effects of the conduct.

Baby Neal, 43 F.3d at 57 (citing 7A Charles Wright, et al., FEDERAL PRACTICE AND PROCEDURE § 1763 at 219 (1986)).

Defendants cannot overcome the presence of commonality simply by asserting that individual circumstances of the putative class members may be different. While each member of this putative class may have different circumstances, these differences will not affect the outcome of the ultimate and common questions before this Court.

Where, as here, the common questions of law and fact predominate across the putative class, certification of a state-wide class is appropriate. Indeed, under such circumstances, certification of national, state-wide, and regional classes is routine. See e.g., Sullivan v. Zebley, 493 U.S. 521, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (national class action related to government benefits); Califano v. Yamasaki, 442 U.S. 682 (1979) (same). Indeed:

> When one seeks to challenge the constitutionality of a statute or governmental regulation as applied to the plaintiff and others similarly situated, a statewide or regional class action, which would require proof on a broad basis, serves to avoid the need for additional suits challenging the same statute or regulation as applied in other geographical areas.

1 NEWBERG ON CLASS ACTIONS (3d ed. 1992) § 5.58. See also Cristiano v. Courts of the Justices of the Peace, 115 F.R.D. 240, 247 (D. Del. 1987) (in case challenging Delaware attachment law as violative of due process, Court granted state-wide class and noted: "In this instance, the policies supporting the use of class action to enjoin unconstitutional government action counsel against an

overly rigid application of the numerosity requirement.") (internal citations omitted); Weaver v. Reagen, 701 F.Supp. 717 (W.D. Mo. 1988) (certification of state-wide class of AIDS patients challenging Missouri Medicaid rules), aff'd as modified, 886 F.2d 194 (8th Cir. 1989); Doe v. Meachum, 126 F.R.D. 442, 443 (D.Conn. 1989) (certification of state-wide class of HIV-infected prisoners); Ruiz v. Estelle, 503 F.Supp. 1265 (S.D. Tex. 1980) (certification of a state-wide class of thousands of past, present and future inmates of the Texas Department of Corrections), affirmed in part, reversed in part, 679 F.2d 1115 (5th Cir. 1982); Inmates of New York State with Human Immune Deficiency Syndrome v. Cuomo, et al., 16 Fed.R.Serv. 1397, 1990 WL 73418 (N.D.N.Y. 1990) (certification of state-wide class consisting of thousands of present and future HIV-infected prisoners held in approximately sixty prisons across New York State).[4]

National, state-wide, or large regional classes were certified in each of these cases which were far more complex and factually intensive than this case. If such far reaching certification was appropriate in those cases, it is appropriate and required here.

---

[4] See also United States ex rel. Martin v. Strasberg, 513 F.Supp. 691 (S.D.N.Y. 1981), aff'd, 689 F.2d 365 (2nd Cir. 1982); rev'd on other grounds sub nom, Shall v. Martin, 467 U.S. 253 (1984) (state-wide class of all present and future juveniles in pretrial preventative detention); Newman v. Alabama, 349 F.Supp. 278 (M.D. Ala. 1972), aff'd, 503 F.2d 1320 (5th Cir. 1974) (granting broad injunctive relief regarding medical care to four thousand prisoners housed in 21 facilities around the state); Lawson v. Wainwright, 641 F.Supp. 312, 314 (S.D. Fla. 1986) (state-wide class of present and future inmates held by the Florida Department of Corrections), affirmed sub nom Lawson v. Dugger, 840 F.2d 781 (11th Cir. 1987), vacated on other grounds and remanded, Dugger v. Lawson, 490 U.S. 1078 (1989), opinion adhered to, Lawson v. Dugger, 844 F.Supp. 1538 (S.D. Fla. 1994); Walker v. Johnson, 544 F.Supp. 345 (E.D. Mich. 1982) (class of Michigan inmates subject to "lockdown"), affirmed in part, reversed in part sub nom Walker v. Mintas, 771 F.2d 920 (6th Cir. 1985); Thompson v. Bond, 421 F.Supp. 878, 880 (W.D. Mo. 1976) (class of all Missouri prison inmates); Delafose v. Manson, 385 F.Supp. 1115 (D.Conn. 1974) (class of all inmates convicted under state law and transferred to state mental hospital); Landman v. Royster, 333 F.Supp. 621 (E.D. Va. 1971) (certification of class of all inmates in Virginia's penal system).

### 3. The Claims of the Named Plaintiffs are Typical of those of the Putative Class (Rule 23(a)(3)).

Whereas commonality is concerned with the necessity of class certification, typicality is designed to ensure that the claims of the named plaintiff coincides with those of the absent class members so that the absent group's interests are adequately represented by the named plaintiff. Again, this case presents the paradigm for typicality: "Actions requesting declaratory and injunctive relief . . . clearly fit the mold." Baby Neal, 43 F.3d at 58.

It is inconceivable that the interests of any absent class member would be even slightly at odds with the interests of the named plaintiff. The relief sought – an injunction against unconstitutional practices related to lethal injection – can only inure to the benefit of the putative class. It is inconceivable that any assertion by the named plaintiff would diminish or adversely affect any right of any absent class member. Even if there were slight differences in the legal positions of the named plaintiffs and absent class members, typicality does not require perfect alignment of the claims. As with the commonality requirement, some variance in legal position does not defeat typicality. Baby Neal, 43 F.3d at 58 ("Typicality entails an inquiry whether 'the named plaintiff's individual circumstances are markedly different or ... the legal theory upon which the claims are based differ[s] from that upon which the claims of other class members will perforce be based.'") (quoting Hassine v. Jeffes, 846 F.2d 169, 176-77 (3d Cir. 1988), and other cases cited therein); In re Warfairn, 212 F.R.D. at 250 ("Typicality lies where there is a strong similarity of legal theories or where the claims of the class representatives and the class members arise from the same alleged course of conduct by the defendant") (citations and internal quotation marks omitted).

**4.     The Representative Parties Will Adequately Protect the Interests of the Class (Rule 23(a)(4)).**

Adequacy of representation turns on two questions: a) whether the named plaintiffs' attorneys are qualified, experienced and generally able to conduct the proposed litigation; and b) whether the named plaintiffs have interests that are antagonistic to those of absent class members. Wetzel v. Liberty Mutual Insurance Co., 508 F.2d 239, 247 (3d Cir. 1975), cert denied, 421 U.S. 1011 (1975).

**a.     Adequacy of Representation**

Counsel representing Plaintiff, Robert Jackson, are experienced counsel employed by the Capital Habeas Corpus Unit (CHU) of the Federal Community Defender for the Eastern District of Pennsylvania (i.e. the Federal Public Defender). They possess special expertise in capital jurisprudence and with regard to the Eighth Amendment and civil rights issues that will arise in this case. Plaintiff submits that they will adequately represent the class.[5]

**b.     The Named Plaintiff Does Not Have Interests Antagonistic to the Class.**

The named plaintiff is an adequate representative of the putative class because he has no interests that are antagonistic to the class, nor are there any actual or potential conflicts of interest. Sosna v. Iowa, 419 U.S. 393 (1975); Wetzel v. Liberty Mutual Insurance Co., 508 F.2d at 247. As noted above, all of Delaware's death row prisoners (current and future) share a common concern that their executions comply with the requirements of the Eighth Amendment.

---

[5]Counsel will submit additional information about their qualifications if they are quesioned by Defendant, or if the Court so directs.

### B. The Putative Class Meets the Requirements of Rule 23 (b)(1) & (b)(2).

Having met the requirements of Rule 23(a), the putative state-wide class must also show that the maintenance of this class action accords with the provisions of Rule 23(b)(1) or (2). In this case, both subsections are satisfied.

Rule 23(b)(1)(A) and (B) permits a class action if maintenance of **individual actions** would create a risk of inconsistent adjudications of the class' claims (sub-section (a)) or that individual adjudications could be dispositive of the rights of the class (sub-section (b)). As explained above the relief sought in this case is appropriate for class relief for these very reasons. Delaware's methods for carrying out executions violate the Eighth Amendment, and permitting individual law suits relating to that question could lead to differing outcomes based on identical law and facts, and therefore 23(b)(1)(A) is satisfied. Moreover, because individual litigation by a member of the putative class could be dispositive of Plaintiff's rights, 23(b)(1)(B) is also satisfied.

Rule 23(b)(2) is also satisfied. That section permits maintenance of a class action if the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making injunctive relief appropriate. Again, the controversy before this Court is based upon the Defendants' practices with regard to lethal injection, which presumably should not vary from case to case.

### II. THE PROPOSED NOTICE TO THE CLASS SHOULD BE APPROVED.

Attached to the *Motion* is a proposed notice to the class. Notice to a class certified under Rule 23 (b)(1) & (2) is permitted, but not required. See Fed.R.Civ.P. 23(c)(2)(A) ("For any class certified under Rule 23(b)(1) or (2), the court may direct appropriate notice to the class."). The Court should approve the proposed notice for a number of reasons. One of the primary purposes

of maintaining this as a class action is consolidate all claims and plaintiffs in this lawsuit. That goal is advanced by formally advising the class that their interests are being protected by this litigation. The distribution of the notice to each class member and posting of the notice would not be burdensome to Defendants. The notice is contained on a single page and it could easily be distributed by Defendants. The language used in the notice is neutral as to the merits of the claims, and simply reports in a factual manner about the existence of the suit and the identity of counsel.

### III. APPOINTMENT OF CLASS COUNSEL.

Mr. Jackson's current counsel are ready, willing and able to represent the class. However, as federal defender employees, they require an order of the Court to do so. Proposed class counsel will not seek attorneys fees under section 1983 should they prevail in this matter, nor will they seek costs related to the litigation.

### IV. CONCLUSION.

For all of the reasons discussed above, Plaintiff requests that the Court certify the proposed class, approve the proposed notice to the class, and appoint the undersigned as class counsel.

Respectfully Submitted,

/s/ Michael Wiseman

Maureen Kearny Rowley
Chief Federal Defender
By:  Michael Wiseman
Helen Marino
Megan McCracken
Assistant Federal Defenders
Federal Community Defender
for the Eastern District of Pennsylvania
Capital Habeas Corpus Unit
Suite 545 West – The Curtis Center
Philadelphia, PA 19106
215-928-0520

Counsel for Plaintiff
Robert W. Jackson, III

Dated:  Wilmington, Delaware
        December 1, 2006

## Certificate of Service

I, Michael Wiseman, hereby certify that on this 1st day of December, 2006 I served the foregoing upon the following persons by United States Mail, First Class, postage prepaid:

Loren Myers, Esq. and Gregory E. Smith
Office of the Attorney General
820 North French Street, 6th Floor
Carvel State Building
Wilmington, Delaware 19801

/s/ Michael Wiseman
_____
Michael Wiseman