IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| ROBERT W. JACKSON, III, | : | **Civil Action No.** |
|  | : | 06-CV-300 |
| Plaintiff, | : |  |
|  | : |  |
| -against- | : | **Chief Judge Sue L. Robinson** |
|  | : |  |
| STANLEY W. TAYLOR, JR., Commissioner, Delaware Department of Correction; THOMAS L. CARROLL, Warden, Delaware Correctional Center; PAUL HOWARD, Bureau Chief, Delaware Bureau of Prisons; and OTHER UNKNOWN STATE ACTORS RESPONSIBLE FOR AND PARTICIPATING IN THE CARRYING OUT OF PLAINTIFF'S EXECUTION, All in their Individual and Official Capacities, | : | **Electronically Filed** |
|  | : |  |
|  | : | **CLASS ACTION** |
|  | : |  |
| Defendants. | : |  |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION**

    Maureen Kearney Rowley
    Chief Federal Defender
    By: Michael Wiseman
    Helen A. Marino
    Megan McCracken
    Assistant Federal Defenders
    Federal Community Defender
    for the Eastern District of Pennsylvania
    Capital Habeas Corpus Unit
    Suite 545 West – The Curtis Center
    601 Walnut Street
    Philadelphia, PA 19106
    215-928-0520
    Counsel for Plaintiff
    Robert W. Jackson, III

Dated: Wilmington, Delaware
       January 5, 2007

## PRELIMINARY STATEMENT

Plaintiff filed this action on May 8, 2006, seeking injunctive relief with regard to unconstitutional aspects of the manner in which Defendants will carry out his execution by lethal injection.

On December 1, 2006, Plaintiff filed a *Motion for Class Certification* and a *Memorandum of Law in Support* (hereinafter, *Motion* and *Plaintiff's Memorandum*).

On December 29, 2006, Defendants filed their *Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Class Certification* (hereinafter, referred to as *Defendants' Memorandum* and cited as *"DM"*).

Plaintiff hereby files this *Reply Memorandum*. All emphasis is supplied unless otherwise noted.

ARGUMENT

A.   **Introduction.**

Defendants concede that Plaintiff meets all of the requirements for class certification under Rule 23 of the Federal Rules of Civil Procedure, except for numerosity. See *DM* at 5 ("Jackson's motion satisfies all of the requirements for class certification except numerosity"). Defendants' numerosity arguments, however, are incorrect. Numerosity in the context of a class motion is a flexible requirement and, contrary to Defendants' arguments, is determined by many considerations. Size of the putative class alone is not dispositive. The cases relied upon by Defendants to support their numerosity arguments largely deal with putative classes that do not have the potential for future members. This factor alone distinguishes the authority relied upon by Defendants from Plaintiff's situation, and weighs in favor of granting the *Motion*.

B.   **The Putative Class Has Sufficient Size to Satisfy Numerosity, and the Cases Cited by Defendants Do Not Involve Fluid Classes.**

Plaintiff has provided this Court with a number of cases in which classes of about the same size as the putative class in this case were certified because they included unknown future members or were otherwise fluid. See *Plaintiff's Memorandum* at 4. There are many more examples of classes of approximately the same size, or even smaller, than Delaware's death row that have been found to satisfy Rule 23(a)'s numerosity requirement.[1]

While acknowledging that there is no "magic number" that satisfies numerosity (*DM* at 2),

---

[1] See Arkansas Education Association v. Board of Education, 446 F.2d 763, 765-66 (8th Cir. 1971) (class of 20); Cypress v. Newport News General and Nonsectarian Hospital Ass'n, 375 F.2d 648, 653 (4th Cir. 1967) (class of 18); Bublitz v. E.I. duPont de Nemours and Co., 202 F.R.D. 251, 256 (S.D. Iowa 2001) (class of 17); Gaspar v. Linvatec Corp., 167 F.R.D. 51, 56 (N.D. Ill. 1996) (class of 18); Manning v. Princeton Consumer Discount Co., Inc., 390 F. Supp. 320 (E.D. Pa. 1975), aff'd, 553 F.2d 102 (3d Cir. 1976) (certifying class of fourteen); Bruce v. Christian, 113 F.R.D. 554, 557 (S.D.N.Y. 1986) (class of 16).

Defendants nonetheless argue that Plaintiff has failed to meet a threshold number for certification, and rely for support on a number of decisions declining class certification to relatively small classes. These case are distinguishable, however, because unlike the proposed class in this case, they did not involve a putative class with potential future members.

Defendants cite <u>Gerstle v. Continental Airlines</u>, 466 F.2d 1374 (3d Cir. 1972) (*DM* at 3), a case in which a class was decertified by the district court *sua sponte*, and without objection, when <u>only fourteen potential plaintiffs responded to class notices</u>. Moreover, the class consisted of stewardesses who lost their jobs as a result of the Airlines' "no-marriage" rule, a policy which had been abandoned by the time the federal action was instituted. Because the policy was abandoned, there was no potential for future members. In any event, the propriety of the certification or decertification was not addressed on appeal, and the appellate decision does not set forth either its own Rule 23 analysis or a discussion of that employed by the district court.

Similarly, in <u>Nesenoff v. Muten</u>, 67 F.R.D. 500 (E.D.N.Y. 1974) (*DM* at 3), class certification was denied after 25 of 43 potential class members were eliminated through waivers of interest or settlement, and the court refused to grant class certification for the remaining 18. Again, that was an instance where the class was fixed, and did not have the potential for future members.

<u>Miller v. Peeples</u>, 456 F. Supp. 38 (N.D. Miss. 1978) (*DM* at 3), contains no analysis of the factors relevant to the question of numerosity, and appears to rest entirely on the "number" of class members. Thus, it is inconsistent with the vast body of decisional law, including that of the United States Supreme Court, rejecting the notion that the determination of whether "numerosity" has been satisfied rests on number alone. <u>See</u>, e.g., <u>General Tel. Co. of Northwest, Inc. v. EEOC</u>, 446 U.S. 318, 330 (1980) ("the numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations.").

Miller, furthermore, is distinguishable because it did not seek – as Plaintiff does – injunctive relief, but rather was an action for compensatory damages. Unlike cases seeking compensatory damages, injunctive cases are the paradigmatic case for class certification:

> In most cases where a plaintiff seeks injunctive relief against discriminatory practices by a defendant, the defendant will not be prejudiced if the plaintiff proceeds on a class action basis, as opposed to an individual basis, because the requested relief generally will benefit not only the claimant but all other persons subject to the practice under attack. 7 C. Wright & A. Miller, Federal Practice & Procedure §1771, at 663-64 (1972). A judicial determination that a particular practice infringes upon protected rights and is therefore invalid will prevent its application by the defendant against many persons not before the court. Thus rigorous application of the numerosity requirement would not, as the district court noted, appear to be warranted.

Weiss v. York Hospital, 745 F.2d 786, 808 (3d Cir. 1984); see also Grant v. Sullivan, 131 F.R.D. 436, 446 (M.D. Pa. 1990).

As already pointed out by Plaintiff, the fluid nature of a class is critical to the question of practicability of joinder and, hence, to the certification decision. See *Plaintiff's Memorandum* at 3-7. Defendants simply have not adequately addressed this point.

Again, while professing that there is no "magic number" that satisfies numerosity, Defendants cite a number of cases for the proposition that, as a general matter, courts have certified classes in excess of 40, but rejected those of under 21. This observation, however, is derived from Professor Moore's treatise on Federal Practice, where it was prefaced with this warning:

> While the attitude taken towards a given number may vary, each opinion reflects a practical judgment on the particular facts of the case. Thus no hard and fast number rule can or should be stated, since "numerosity" is tied to "impracticability" of joinder under the specific circumstances.

Weiss, 745 F.2d at 808 n. 35 (quoting 3B J. Moore, MOORE'S FEDERAL PRACTICE ¶ 23.05[1], at 23-150 (2d ed. 1982) (footnotes omitted)).

In support of their more-than-40-not-less-than-21 argument, Defendants cite Novella v.

4

Westchester County, 443 F. Supp. 2d 540 (S.D.N.Y. 2006) (*DM* at 2). There, the court certified a class of only 24 members, retirees who were affected by a pension fund plan that was no longer in effect; so that the members of the class were identifiable and fixed. The court emphasized that the "[d]etermination of practicability depends upon all the circumstances surrounding a case, not on mere numbers." Id. at 546 (quoting Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993)). Among those factors particularly persuasive to the court was the lack of financial resources of the class members (retirees on a fixed income) and their questionable ability to file individual lawsuits. As discussed in the *Plaintiff's Memorandum* at 6, lack of resources and questionable ability to file individual suits are reasons to grant certification in this case.

Defendants also cite Ansari v. New York University, 179 F.R.D. 112 (S.D.N.Y.1998) (*DM* at 2). There, the court noted that there are no "rigid parameters" defining numerosity, and that the ultimate issue was whether joinder was practicable. The court considered factors other than class size, including: judicial economy; the financial resources of those members; the ability of the members to file individual suits;[2] and requests for prospective relief that may affect future class members.[3] Ansari, 179 F.R.D. at 114-15. Again, as previously argued, these factors all weigh in favor of

---

[2] In regard to this factor, the court noted that the situation before it was not one in which the prospective class members were 1) incarcerated (citing United States ex rel. Walker v. Mancusi, 338 F. Supp. 311, 315-16 (W.D.N.Y. 1971), aff'd, 467 F.2d 51 (2d Cir. 1972) (certifying class of 38 inmates incarcerated on specific cell block because of their suspected involvement in prison unrest)), or 2) unsophisticated (citing Rodriguez v. Berrybrook Farms, Inc., 672 F. Supp. 1009, 1014 (W.D. Mich. 1987), Ansari, 179 F.R.D. at 115.

[3] As to this factor, the district court noted (unlike the case at bar) that no prospective relief had been sought. The court wrote that when a class includes person who may be injured in the future and who are, therefore, impossible to identify at present, "joinder is not practical 'because parties who have not yet been injured, or who do not know that they have been injured, are unlikely to join a lawsuit.'" Ansari, 179 F.R.D. at 116 (citation omitted; distinguishing Bruce v. Christian, 113 F.R.D. 554, 557 (S.D.N.Y. 1986), in which a class of 16 known members was certified, but class membership was fluid and there were unknown potential future members).

5

certification in this case.

While the lack of financial resources and ability to institute individual actions prompted the certification of the class of 24 in Novella, the converse was true in Ansari: the financial stability and wherewithal of the 35 orthodontics students who constituted the putative class members counseled against certification, as did the fact that many members of the class were foreign nationals, who potentially remained free to institute actions in their home countries, regardless of the outcome of a class action. As described below, the putative class in this case is comprised of only indigent prisoners.

### C. Joinder is Impracticable.

Defendants offer a number of arguments as to why joinder of the members of the putative class is not impracticable. These arguments, however, ignore the realities of the conditions of the putative class members. Defendants do not dispute that the members of the putative class are indigent; they are for the most part persons of limited education and resources, and undoubtedly many are plagued with mental health issues. These factors all weigh against joinder, and in favor of certification, as pointed out in *Plaintiff's Memorandum* at 5-6. Moreover, there will undoubtedly be future members of the class whose identities are at this time unknown, but whose rights and interests will be affected by the outcome of this litigation.

Defendants offer no argument refuting the significance of the fluid nature of the putative class. Rather, they unpersuasively seek to discount, or circumvent, every one of the factors favoring a finding of numerosity on that basis. For example, although Defendants agree that the potential members of the class are indigent, they suggest that indigency is insignificant because class members individually may seek to proceed *in forma pauperis*. Not surprisingly, Defendants do not cite any cases suggesting that the availability of *in forma pauperis* status is an appropriate consideration in

determining whether to certify a class. Indeed, the need to grant such status to the putative class members here, weighs in favor of class certification, rather than a reason to avoid it. Nor could there be any such authority: after all, prison cases are paradigmatic examples of a class action, for they typically present criminal justice claims on behalf of persons ill-suited to bring individual actions. *Plaintiff's Memorandum* at 5. In any event, *in forma pauperis* status provides only minimal relief in the context of an action under Section 1983. The federal *in forma pauperis* statute, 28 U.S.C. § 1915, still requires prisoners to pay the fees and costs of litigation, provides counsel only at the court's discretion (and, of course, at the public's expense), and does not provide the litigant with the right to litigation costs, or assistance in hiring expert witnesses, which will obviously be required in this case.

Defendants also appear to suggest that each of the presently known members of the potential class is capable of bringing his own action, or being joined as parties. Aside from not addressing future class members, this argument assumes that Plaintiff's counsel will act as unofficial class counsel, by communicating and seeking out other class members. See *DM* at 4 ("Communication by Jackson's attorneys with the other putative class members is no more difficult than communication with Jackson himself."). This argument ignores restrictions that are routinely placed on communications with death row prisoners by those other than counsel. One does not simply gain entry to the correctional facility at Smyrna to visit non-clients. Unless Defendants are prepared to stipulate to undersigned counsels' unfettered access to the putative class, Defendant's suggestion that joinder would be practicable rings hollow. And, if Defendants are willing to provide that access, how are they, or the putative class, harmed by permitting class certification?

Similarly, Defendants have not addressed the prospect of a new or impending death warrant on a member of the putative class in the event certification is denied. Obviously, the target of a new

7

execution warrant would seek the same temporary injunctive relief as Mr. Jackson. Yet, to do so, he would either have to file a separate action or seek joinder.

Defendants also suggest that joinder is practicable because each of the members of the class is already represented by counsel (regarding their capital convictions), and so they cannot be said to be ignorant of their legal rights. Initially, this argument ignores the special expertise of undersigned counsel – such expertise having led to their being asked to lend assistance to the bar in Delaware in capital cases. Defendants' argument also assumes a great deal about the nature of the relationship between individual prisoners and their attorneys, and the willingness of various court-appointed counsel to mount complicated and time-consuming civil rights challenges. Nor can it fairly be said that any of the attorneys appointed to represent the capital inmates in either state post-conviction or federal habeas proceedings would understand their appointments to encompass a duty to litigate such an action. Undersigned institutional counsel, on the other hand, are cognizant of this responsibility and are equipped and resourced to undertake this litigation. Indeed, it is noteworthy that despite the proliferation of lethal injection challenges arising around the country, none was mounted in Delaware until this case was filed.

### D.     Conclusion.

Defendant's opposition to the *Motion* would appear more reflexive than reasoned. Other than ceremoniously standing on their numerosity argument, Defendants have articulated neither how the Defendants nor the putative class could possibly be harmed by class certification. Weighing against the Defendants' hyper-technical and erroneous interpretation of numerosity, are all of the benefits that would inure to the class, and the Court, by granting certification. Class certification is unquestionably the most economical manner of proceeding for the litigants and the court. It will insure the most prompt means of disposing of these important constitutional issues in one case, and without the

8

potential for conflicting rulings between the state and federal courts. Defendants have simply offered no good reason not to certify the class.

For these reasons, and for all of those set forth in the *Motion* and *Plaintiff's Memorandum*, Plaintiff requests that class certification be granted.[4]

Respectfully Submitted,

/s/ Michael Wiseman

Maureen Kearny Rowley
Chief Federal Defender
By:  Michael Wiseman
Helen A. Marino
Megan McCracken
Assistant Federal Defenders
Federal Community Defender
for the Eastern District of Pennsylvania
Capital Habeas Corpus Unit
Suite 545 West – The Curtis Center
Philadelphia, PA 19106
215-928-0520

Counsel for Plaintiff
Robert W. Jackson, III

Dated: Wilmington, Delaware
         January 5, 2007

---

[4] Defendants have not articulated any opposition to the proposed class notice provided by Plaintiff. Should the *Motion* be granted, Plaintiff requests that the Court also order that the notice be distributed as requested in the *Motion*.

9

## CERTIFICATE OF SERVICE

    I, Michael Wiseman, hereby certify that on this 5th day of January, 2007, I served the foregoing upon the following persons by United States Mail, First Class, postage prepaid:

Loren Myers, Esq. and Gregory E. Smith<br>
Office of the Attorney General<br>
820 North French Street, 6th Floor<br>
Carvel State Building<br>
Wilmington, Delaware 19801

                                  /s/ Michael Wiseman
                                  _____
                                  Michael Wiseman