IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROBERT W. JACKSON, III | : | Civil Action |
| Plaintiff, | : | No. 06-300 |
| vs. | : | Hon. Sue L. Robinson |
| CARL DANBERG, JR., Commissioner, Delaware Department of Correction, et al., | : | CLASS ACTION |
| Defendants. | : | |

**PLAINTIFFS' ANSWER TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND
PLAINTIFFS' CROSS MOTION TO COMPEL DEFENDANTS TO CONDUCT APPROPRIATE BACKGROUND CHECKS REGARDING PERSONS ANONYMOUSLY IDENTIFIED AS MEMBERS OF DELAWARE'S PAST AND PRESENT LETHAL INJECTION TEAMS AND TO DISCLOSE TO PLAINTIFF ALL NON-IDENTIFYING RESULTS OF THOSE CHECKS**

Plaintiffs, through undersigned counsel, hereby file their *Answer in Opposition* to *Defendants' Motion for Protective Order*, and *Cross Motion*. The controversy raised by Defendants' *Motion* and Plaintiffs' *Cross Motion* is whether Plaintiffs will be able to conduct a suitable investigation into individuals – whose identities have been protected by Defendants – who participate in the lethal injection process in Delaware. As shown below, Plaintiffs' counter proposal, as articulated in their *Cross Motion*, meets Defendants' need to maintain confidentiality, while serving Plaintiffs' need to discover relevant facts.

Plaintiffs cross move to compel the Defendants to conduct reasonable and appropriate investigation into the competency, qualifications, and professional standing of those persons who have been identified (anonymously) during discovery as the members of Delaware's lethal injection team and to disclose to Plaintiffs the results of that investigation. Plaintiffs make this request in lieu

of a request for disclosure of the identities of such persons, in order to accommodate Defendants' concern for the safety and the privacy of the members of its lethal injection team, while still enabling Plaintiffs to discover relevant information regarding the background, veracity, and professional qualifications of key personnel in Delaware's lethal injection process. Plaintiffs are entitled to the information enumerated below, and, in the absence of the ability to conduct their own investigation, Plaintiffs submit that partial disclosure of the information by Defendants is a reasonable and practical accommodation of both parties' interests.

*Defendants' Motion for a Protective Order* appears to assume that Plaintiffs view obtaining the identities of the anonymous members of the injection team and the anonymous physician who participates in the process as an end in itself. See e.g. *Defendants' Motion* at ¶ 3 ("reveal[ing] identities of the execution participants serves no legitimate purpose"). Defendants misconstrue Plaintiffs' goal. Plaintiffs have zero interest in learning the identities of these anonymous individuals. Rather, Plaintiffs' only interest is in seeing that a proper background investigation and check is conducted with respect to each so that the Class can be confident that these individuals are suitable to perform the tasks related to executions.

Accordingly, and as explained below, Plaintiffs do not move for the identities of these individuals. Rather, they request that Defendants provide them with the materials they seek, redacted so as to remove identifying information.[1] In support of this request, Plaintiffs submit the following.

---

[1] To be sure, Plaintiffs believe that they are within their rights to learn the identities so that they can conduct their own investigation. Plaintiffs' counsel would be willing to receive this information, subject to a protective order prohibiting them from disclosing the identities of these individuals outside of the litigation. Then, counsel could conduct the requisite investigations without burdening Defendants. Plaintiffs leave it to the Court to determine which course is more appropriate.

1.      For the past several months, Plaintiffs and Defendants have been engaged in discovery. Defendants have produced over 2000 pages of documents, and depositions are underway. Pursuant to Plaintiffs' interrogatories, Defendants have identified five past and present members of Delaware's lethal injection team and the physician who has participated in the executions. As suggested by Plaintiffs, see *Plaintiff's First Discovery Request*, ¶ 11 (attached to the *Defendants' Motion for Protection Order*), Defendants identified these persons anonymously. They have been referred to as Jane Doe 1, Jane Doe 2, John Doe 1, John Doe 2, John Doe 3, and Physician.

2.      Defendants have informed Plaintiffs that each person identified as a Jane or John Doe member of the lethal injection teams is either a nurse or paramedic. As revealed in discovery, these persons have carried the responsibility of preparing drugs for lethal injection, achieving intravenous access for lethal injection, and administering the drugs used in the lethal injection process. The Physician is responsible for a range of activities (depending on who you ask) from pronouncing death to providing technical and operational assistance in the execution process.

3.      Plaintiffs requested to depose each of these individuals, and Defendants agreed to produce them. To date, John Doe 2 and John Doe 3 (Delaware's present injection team), Jane Doe 1, and the Physician have been deposed.

4.      At his deposition, John Doe 2 testified that he is a licensed and practicing paramedic. He testified that, for the purpose of participating in Delaware's injection team, he personally sought out training in the cutdown procedure, even though he is not licensed to perform such a procedure unless a physician supervises and assumes ultimate responsibility.[2] John Doe 2 did not claim to have

---

[2] A cutdown is a method of obtaining venous access by making an incision in the skin and exposing the vein. All of Delaware's written lethal injection procedures prior to the August 1, 2005 procedure, referred specifically to the cutdown procedure. See Discovery at 16, 145, 222, 293, 371

any specific training regarding the use or administration of the drugs used in Delaware's lethal injection procedure. More important, he admitted that he is not authorized to administer such drugs in the course of his normal paramedic duties. He revealed that he has been subjected to discipline at his workplace but stated that his paramedic license has never been suspended or revoked. John Doe 2 also testified that he has previously testified in three depositions and two trials.

5.      At his deposition, John Doe 3 testified that he was employed as a paramedic in the past and – unwilling to name his current occupation out of privacy concerns – he stated he is currently employed part-time, but would not disclose his current occupation. He testified that his paramedic license expired and that he allowed his license to lapse "because he could." John Doe 3 stated that he previously has testified in at least one medically-related lawsuit. John Doe 3 did not claim to have any specific training regarding the use or administration of the drugs used in Delaware's lethal injection procedure and stated that he has never received training to perform a cutdown. John Doe 3 testified that he became a member of the lethal injection team when John Doe 2 asked if he was interested in doing so. He was subsequently interviewed by Warden Snyder, who asked him, among other things, about his feelings toward the death penalty.

6.      Jane Doe 1, who was deposed on June 5, testified that she was licensed and employed as a Registered Nurse, and now she is retired. She testified that as a nurse, she did not work with the specific drugs used in the execution, but she did work with barbiturates and other similar drugs.

---

(stating that the Warden "shall re-contact the Medical Examiner/physician and request they be on-site two (2) hours prior to the execution to assist in cut down if needed"). The 2005 procedure changed the wording to state that the "Medical examiner/physician" should be on-site two hours ahead of the execution "to assist if needed." Discovery at 432. It thus appears that the Procedure at least anticipates that a cutdown might be performed, and some of the equipment necessary to perform one is required to be available during an execution (notably missing is any form of local anesthesia).

Jane Doe 1 indicated that she was not qualified or licensed to perform a cutdown. She testified that she had previously testified in one trial, in which she was a witness, not a party.

8.  At his deposition, the Physician testified that he is a medical doctor and that he has maintained a practice in family medicine for many years. The Physician, who has participated in every execution to date, testified that he has no involvement in the execution procedure, knows little about it, and is not knowledgeable in the related areas of medicine, including anesthesia and emergency medicine. He testified that he does not know how to perform a cutdown and would not perform one. He further testified that he would not assist in any aspect of the execution, except for pronouncing death, even if asked to do so. However, the execution protocol requires that the Physician be available to assist with the execution procedures, and the current Warden (Thomas Carroll) also believes that the Physician is required to play a role greater than simply pronouncing death. The Physician admitted during the deposition that he has been a defendant in at least three medical malpractice cases. He indicated that each was "settled" and he offered highly exculpatory versions of the facts relevant to his alleged malpractice.

7.  Defendants have not yet produced John Doe 1 or Jane Doe 2.

8.  To date, six employees and former employees of the Department of Correction have been deposed. According to their testimony, none has conducted an independent investigation into the background or credentials of any injection team member or the Physician, and Defendants have not produced a single piece of paper that suggests such an investigation ever was conducted. Moreover, it appears that none of the DOC officials thus far deposed knows exactly how any of the Jane or John Does or the Physician were selected for their positions on the lethal injection team.

9. Thus, the sum total of information Plaintiffs have received regarding the background, training, qualifications, competency, and professional standing of each execution team member is the uncorroborated deposition testimony of that execution team member. As medical personnel who have chosen to apply their medical training to the task of accomplishing executions, they are interested parties with motive to present themselves in the most favorable light possible. Plaintiffs should not be required to accept blindly the injection team members' representations about their backgrounds and professional standing. Yet, Defendants' *Motion* would effectively prevent the Class from conducting any additional inquiry or investigation.

10. It is reasonable for Plaintiffs to request and expect this type of information about the execution team members. Indeed, ultimately this Court will address issues regarding the competency, qualifications, skill, and professional standing of the persons tasked with carrying out executions to determine whether Delaware's lethal injection procedures are constitutionally adequate, or if they instead violate the Eighth Amendment's ban on cruel and unusual punishment. Additionally, the veracity of each person will be relevant to determining his/her credibility as a witness.

11. Plaintiffs' interest in obtaining this information is not academic, nor is it intended to harass or burden Defendants. Rather, this information is necessary for the accurate assessment of the appropriateness of the lethal injection protocol and the qualifications of those responsible for administering it. Moreover, it is imperative for both Plaintiffs and the Court (and one would imagine for Defendants charged with carrying out executions in a constitutional manner) to know if the anonymous witnesses have testified truthfully about their professional qualifications and their backgrounds. Plaintiffs have no information suggesting that a witness has been less than truthful in

their deposition testimony, but counsel are nonetheless obligated to conduct these inquiries. As the following examples show, in similar litigation around the country, those in similar positions to the anonymous participants in this case have been less than truthful, and disturbing details about their backgrounds have come to light.

12. In the California lethal injection litigation, the Court found "the pervasive lack of professionalism in the implementation" of the state's lethal injection protocol to be "deeply disturbing." Morales v. Tilton, 465 F.Supp.2d 972, 980 (N.D.Cal.2006). The Court found that the protocol "in actual practice . . . does not function as intended," Id. at 979, and cited numerous deficiencies, including "**[i]nconsistent and unreliable screening of execution team members**," "[a] lack of meaningful training, supervision, and oversight of the execution team," and "[i]mproper mixing, preparation, and administration of sodium thiopental by the execution team," Id. at 979-80. With respect to the lethal injection team members, the Court stated the following:

> [O]ne former execution team leader, who was responsible for the custody of sodium thiopental (which in smaller doses is a pleasurable and addictive controlled substance), was disciplined for smuggling illegal drugs into San Quentin; another prison guard led the execution team despite the fact that he was diagnosed with and disabled by post-traumatic stress disorder as a result of his experiences in the prison system and he found working on the execution team to be the most stressful responsibility a prison employee ever could have.

Id. at 979. The Court further found that "the team members almost uniformly have no knowledge of the nature or properties of the drugs that are used or the risks or potential problems associated with the procedure" and "are not adequately prepared to deal with any complications that may arise." Id.

13. In lethal injection litigation in Missouri, it was learned through discovery that the medical doctor responsible for mixing and administering the drugs suffered from dyslexia:

> . . . the Court also has concerns about John Doe I's qualifications. John Doe I readily admitted that he is dyslexic and that he has difficulty with numbers and oftentimes transposes numbers. John Doe I testified "it's not unusual for me to make mistakes.... But I am dyslexic and that is the reason why there are inconsistencies in my testimony. That's why there are inconsistencies in what I call drugs. I can make these mistakes, but it's not medically crucial in the type of work I do as a surgeon." (John Doe Depo. p. 25). The Court disagrees and is gravely concerned that a physician who is solely responsible for correctly mixing the drugs which will be responsible for humanely ending the life of condemned inmates has a condition which causes him confusion with regard to numbers.

Taylor v. Crawford, 2006 WL 1779035 at *7 (slip. op. W.D. Mo. 2006). Following the Court's opinion, a journalist from the St. Louis Post-Dispatch discovered the doctor's identity through a Freedom of Information Act request and subsequently revealed that the doctor had qualification issues beyond his dyslexia:

> The Post-Dispatch has confirmed the man behind the screen was Dr. Alan R. Doerhoff, 62, of Jefferson City. Two Missouri hospitals won't allow him to practice within their walls. He has been sued for malpractice more than 20 times, by his own estimate, and was publicly reprimanded in 2003 by the state Board of Healing Arts for failing to disclose malpractice suits to a hospital where he was treating patients.

Jeremy Kohler, *Behind the mask of the Mo. execution doctor*, St. Louis Post-Dispatch, July 30, 2006. The journalist further uncovered that the doctor lied under oath in at least two lawsuits, and attorneys in the lethal injection litigation subsequently discovered that he had lied under oath during his deposition.

      14.    Other lethal injection litigation across the country is turning up similar background information about the persons tasked with carrying out executions by lethal injection – disciplinary actions at their places of employment, including disciplinary action against DOC personnel involved in the execution team, criminal convictions, and perjury under oath – that casts serious doubt on the appropriateness of their participation in the execution procedure.

15.     Plaintiffs do not know if they will find similar or equally disturbing facts about those involved in Delaware's process, but there can be no doubt that this is a relevant inquiry and one that class counsel are obliged to conduct.

### CONCLUSION

16.     Plaintiffs would be within their rights to demand that Defendants identify these individuals – subject to a protective order prohibiting disclosure of identities outside of the litigation – to permit the Class to conduct the necessary investigation into their backgrounds and histories. However, in the interest of resolving this dispute, and acknowledging that Defendants' and the injection team members' privacy concerns are not baseless, Plaintiffs move for an order requiring Defendants' counsel to conduct the appropriate background investigation of the unnamed participants and to provide the results to Plaintiffs' counsel with redaction of any identifying information.

17.     Thus, to be clear, Plaintiffs do not seek the *identities* of the Jane and John Does or the Physician (although counsel for Plaintiffs absolutely would agree to maintain the secrecy of their identities, were those identities revealed to counsel, and counsel would abide by any requirements that the Court might set out to maintain their anonymity). Rather, Plaintiffs suggest a reasonable alternative that protects the interests of all involved. Defendants need not disclose the identities of any injection team members, but must undertake an independent investigation into all aspects of *the competency, qualifications, and professional standing of each of the individuals* tasked with any aspect of carrying out Delaware's lethal injection procedure, and must candidly and fully disclose the results of that investigation to Plaintiffs. Specifically, Plaintiffs request that Defendants be

required to conduct the following investigation and turn over the following information for each anonymous witness:

    a)    documentary proof of each person's successful completion of the requirements for licensure in their medical field in Delaware and any other state where that person was ever licensed;

    b)    any and all files related to each person's licensure that are generated or maintained by any and all states, agencies, or other professional organizations, including any and all records regarding any denial of licensure or action on a license, including complaints, investigations, suspensions, or revocations;

    c)    any and all personnel files relating to the person's employment in the field of health care, including any record of complaints against the person, investigations into his/her conduct, or disciplinary actions taken against him/her;

    d)    documentary evidence relating to any disciplinary actions against the person in connection with medical services rendered, including actions taken by an employer, or ethical or professional disciplinary board or entity;

    e)    documentary evidence relating to any professional certifications issued, or for which the person applied but was denied;

    f)    documentary evidence of any professional complaint or legal claim (*e.g.* lawsuit) made against the person relating to professional services rendered by him/her, including any and all information, documentary evidence, testimony, or in the absence of testimony, a statement of explanation regarding the person's testimony or statement regarding any professional services as to which the lethal injection team member was required to give testimony;

    g)    the criminal history, including arrests, if any.

WHEREFORE, Plaintiffs request that Defendants' *Motion* be denied, and that Plaintiffs' *Cross Motion* be granted in full. A proposed order follows.

Respectfully Submitted,

/s/ Michael Wiseman

Michael Wiseman
Helen A. Marino
Supervisory Assistant Federal Defenders
Megan McCracken
Assistant Federal Defender
Federal Community Defender for the
Eastern District of Pennsylvania
Capital Habeas Corpus Unit
Suite 545 West – The Curtis Center
Philadelphia, PA 19106
215-928-0520
Counsel for the Class

Dated: June 7, 2007
        Philadelphia, PA

## Certificate of Service

I, Michael Wiseman, hereby certify that on this 7th day of June, 2007 I served the foregoing upon the following person by e-mail and United States Mail:

Loren Myers, Esq., Gregory E. Smith, Esq., Elizabeth McFarland, Esq.
Office of the Attorney General
820 North French Street, 6th Floor
Carvel State Building
Wilmington, Delaware 19801

               /s/ Michael Wiseman
               _____
               Michael Wiseman

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROBERT W. JACKSON, III | : | Civil Action |
| Plaintiff, | : | No. 06-300 |
| vs. | : | Hon. Sue L. Robinson |
| CARL DANBERG, JR., Commissioner, Delaware Department of Correction, et al., | : | CLASS ACTION |
| Defendants. | : | |

**ORDER**

AND NOW, this ____ day of June, 2007 upon consideration of Defendants' *Motion for a Protective Order*, Plaintiffs' *Answer* thereto and *Plaintiffs' Cross Motion* (to compel Defendants to perform background investigations of members of the lethal injection team and physician, and to disclose those results to Plaintiffs, with appropriate redactions to maintain the confidentiality of said individuals), it is hereby **ORDERED:**

I.  Defendants' Motion for a Protective Order is DENIED.

II. Plaintiffs' Motion is Granted.

III. Within ___ days of the date of this Order, Defendants shall conduct an investigation and inquiry into the backgrounds of those participants in the lethal injection process whose identities have thus far been withheld. The investigation/inquiry shall cover the following areas, and Defendants shall obtain the following:

    a) documentary proof of each person's successful completion of the requirements for licensure in their medical field in Delaware and any other state where that person was ever licensed;

    b) any and all files related to each person's licensure that are generated or maintained by any and all states, agencies, or other professional organizations, including any and all records regarding any denial of licensure or action on a license, including complaints, investigations, suspensions, or revocations;

    c) any and all personnel files relating to the person's employment in the field of health care, including any record of complaints against the person, investigations into his/her conduct, or disciplinary actions taken against him/her;

        d)      documentary evidence relating to any disciplinary actions against the person in connection with medical services rendered, including actions taken by an employer, or ethical or professional disciplinary board or entity;

        e)      documentary evidence relating to any professional certifications issued, or for which the person applied but was denied;

        f)      documentary evidence of any professional complaint or legal claim (e.g. lawsuit) made against the person relating to professional services rendered by him/her, including any and all information, documentary evidence, testimony, or in the absence of testimony, a statement of explanation regarding the person's testimony or statement regarding any professional services as to which the lethal injection team member was required to give testimony;

        g)      the criminal history, including arrests, if any.

IV.    Upon obtaining the materials listed in section III, above, Defendants shall redact said materials to remove identifying information, and shall provide redacted copies to Plaintiffs' counsel with ___ days of their receipt by Defendants.

V.    Even though the information turned over to Plaintiffs will be redacted, Plaintiffs' counsel, their agents, and experts, shall not disclose any of this information to any person not participating in this litigation. It shall not be provided to class members.

**SO ORDERED,**

_____
Sue L. Robinson, Chief U.S.D.J.