IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROBERT W. JACKSON, III, et. al.<br><br>Plaintiffs,<br><br>-against-<br><br>CARL C. DANBERG, et. al.,<br><br>Defendants. | Civil Action No.<br>06-CV-300<br><br>Judge Sue L. Robinson<br><br>Class Action |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
*PLAINTIFFS' MOTION TO AMEND COMPLAINT*

                                          Maureen Kearney Rowley
                                          Chief Federal Defender
                                          By: Michael Wiseman
                                          Helen Marino
                                          Megan McCracken
                                          Assistant Federal Defenders
                                          Federal Community Defender
                                          for the Eastern District of Pennsylvania
                                          Capital Habeas Corpus Unit
                                          Suite 545 West – The Curtis Center
                                          Philadelphia, PA 19106
                                          215-928-0520
                                          Counsel for the Class

Dated:  Wilmington, Delaware
        August 15, 2007

**PRELIMINARY STATEMENT**

Pending before the Court is Plaintiffs' civil rights lawsuit challenging certain aspects of Defendants' methods for carrying out executions by lethal injection as violative of the Eighth Amendment to the United States Constitution.

Plaintiffs have filed a *Motion to Amend the Complaint* seeking leave to add a pendant state law claim alleging that Defendants have violated state law by not submitting the execution procedures to the requirements of Delaware's Administrative Procedures Act (APA). This Memorandum of Law is submitted in support of *Plaintiffs' Motion to Amend the Complaint.*

**INTRODUCTION**

This class action civil rights Complaint is scheduled for trial commencing on October 9, 2007. The class seeks injunctive relief prohibiting the Defendants from carrying out executions by lethal injection in a manner that violates the Eighth Amendment to the United States Constitution. The manner in which executions by lethal injection are carried out in Delaware is set forth in official Department of Correction Policies, Bureau of Prison Procedures, and Delaware Correctional Center Procedures. These written policies and procedures have been amended at least six times between March 1993 and August 2005.

As a result of this litigation, Defendants may unilaterally amend their procedures yet again. Defendants could amend the procedures pre-trial in an attempt to render moot certain points that are likely to be contested at trial. Or they could amend the procedures following a judgment in Plaintiffs' favor. In either case, Plaintiffs have an interest in insuring that any such changes that occur prior to or after trial comport with applicable state law. Specifically, the promulgation or amendment of the execution procedures is governed by the Delaware Administrative Procedures Act

1

("APA"), 29 Del. C. § 10101, et seq, and Defendants must comply with the APA.

As explained herein, the APA clearly applies to the Department of Correction and governs the promulgation or amendment of the execution policies and procedures. The Plaintiff class has a right to insure that the procedures by which they are executed have been legally promulgated in accordance with the APA and that any changes made to the procedures comport with the APA. As explained below, the APA provides Plaintiffs with a legal remedy for Defendants' failure to abide by their regulatory obligations.

The Delaware APA constitutes an important safeguard in the promulgation of all regulations by covered state agencies. It requires transparency of process by requiring publication of agency regulations, a period for public comment, and that the agency make findings with respect to the comments offered by the public. To be sure, the Plaintiff class' standing to litigate the Proposed Amendment is secured by statute, and the Proposed Amendment is offered by the Plaintiff class alone. Nonetheless, requiring the Defendants to conform to the APA will have a salutary effect on the public. One can scarcely imagine an area in which the public has a greater right to transparency than in the promulgation of regulations by which the State executes a member of the public.

## ARGUMENT

### AMENDMENT OF THE COMPLAINT SHOULD BE PERMITTED

Amendment of a complaint is governed by Rule 15 of the Federal Rules of Civil Procedure. As the Proposed Amendment in this case is proffered after Defendants have filed an Answer to the original Complaint, amendment is permitted only upon consent of the Defendants or upon leave of Court. Rule 15(a). Defendants do not consent to the Proposed Amendment.

Leave to amend should be "freely given when justice so requires," id., and "this mandate is

to be heeded," Foman v. Davis, 371 U.S. 178, 182 (1962).

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failed to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given'".

Id. The granting of such leave is within the discretion of the District Court. Id.

This Court has identified the considerations governing whether leave should be granted. Noting that the Third Circuit has "adopted a liberal approach to the amendment of pleadings," Koken v. GPC International, 443 F.Supp.2d 631, 633 (D. Del. 2006), this Court has observed that it has discretion to deny leave only if: "(1) the moving party has demonstrated undue delay, bad faith or dilatory motive, (2) the amendment would be futile, or (3) the amendment would prejudice the other party," id. (quoting Hill v City of Scranton, 411 F.3d 118, 134 (3d Cir. 2005)); see also Lorenz v. CSX Corporation, 1 F.3d 1406, 1423 (3d Cir. 1993) ("In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'").

Plaintiffs' request for leave to amend is not precluded by any of these factors, and accordingly amendment should be granted.

3

**I.     Undue Delay, Bad Faith, Dilatory Motive or Prejudice.**

Generally, delay in filing the amendment alone is not a sufficient reason for denying leave to amend. USX Corporation v. Barnhart, 395 F.3d 161, 167 (3d Cir. 2004); Cornell and Company v. Occupational Health and Safety Review Commission, 573 F.2d 820, 822 (3d Cir. 1978); Koken, 443 F.Supp.2d at 633-34. Delay in requesting leave to file an amendment becomes "undue" when it places an "unwarranted burden on the court," or "will become prejudicial" to the opposing party. USX Corp., 395 F.3d 161 at 167.

Plaintiffs have admittedly not filed their motion seeking leave in accordance with the Court's original schedule.[1] Although this delay alone is not sufficient to refuse the request for leave, Plaintiffs submit that their failure to file earlier resulted from counsel only recently becoming aware of this potential ground for relief. Moreover, as demonstrated below, the Proposed Amendment will neither burden the Court, nor prejudice Defendants.

The claim raised in the Proposed Amendment is largely, if not entirely, a question of law. Thus, there will be no need for either party to conduct separate or additional discovery on the issue raised in the Proposed Amendment. Similarly, resolution of the issue will not require the taking of significant additional evidence at trial, if any additional evidence at all. Accordingly, permitting the Amendment will not pose an undue burden on either the Court or the Defendants.

"It is well-settled that prejudice to the non-moving party is the touchstone for the denial of an amendment." Cornell and Company, 573 F.2d at 823. As this Court has formulated, in order to deny leave based on prejudice to the non-moving party, "the prejudice must be 'substantial and undue' and 'there must be some showing that [the party's] ability to present its case would be

---

[1] The original date for amendments was December 1, 2006, see document # 20.

4

seriously impaired were amendment allowed.'" Koken, 443 F.Supp.2d at 634 (quoting Lorenz, 1 F.3d at 1414; Dole v. Arco Chemical Co., 921 F.2d 484, 488 (3d Cir.1990)).

Plaintiffs cannot imagine how permitting the Amendment will prejudice Defendants in the least, much less "substantially." Nor can Plaintiffs imagine that amendment would "seriously impair" Defendants' ability to present their case. As noted above, and explained below, the relief sought in the Proposed Amendment turns almost entirely on issues of law: neither significant discovery, nor fact finding at trial will be required for its resolution. The Amendment will not delay the start of trial, and it will not lengthen the trial.

Finally, as this Proposed Amendment will neither lengthen discovery or delay trial, there is no concern that the Amendment is being offered for "dilatory" purposes, or that Plaintiffs are acting in bad faith.

**II.   The Claim Contained in the Proposed Amendment is Meritorious and Therefore Amendment is Not Futile.**

Futility of amendment is a ground for denial. Koken, 443 F.Supp.2d at 633. "Futility of amendment occurs when the complaint, as amended, does not state a claim upon which relief can be granted." Id. at 634. Thus, "if the proposed amendment 'is frivolous or advances a claim . . . that is legally insufficient on its face, the court may deny leave to amend.'" Id. (quoting Harrison Beverage Co. v. Dribeck Importers Inc., 133 F.R.D. 463, 468 (D. N.J. 1990)).

The Proposed Amendment alleges that Defendants have an obligation under state law to publish their lethal injection procedures for public review and comment. Plaintiffs believe that Defendants have not done so with any of the procedures for lethal injection to date. Accordingly, Plaintiffs are entitled to an Order compelling compliance with applicable state law. Plaintiffs herein

will review the various elements of their proposed claim to show that it is meritorious, and, because it is not frivolous, amendment should be permitted.

      **A.     The Court Would Have Jurisdiction Over the Claim.**

The proposed claim is grounded in state law, and therefore this Court's jurisdiction to adjudicate this claim is found at 28 U.S.C. § 1367. Section 1367 provides that when a district court has original jurisdiction over a claim, it has "supplemental jurisdiction" over "all other claims that are so related to claims in the action."

Thus, section 1367 permits jurisdiction over pendant state law claims that are brought in a civil rights action – like the instant one – under 42 U.S.C. § 1983. See, e.g., Yarris v. County of Delaware, 465 F.3d 129, 134 (3d Cir. 2006) (finding in a section 1983 civil rights case that "the district court had supplemental jurisdiction over . . . state law claims pursuant to 28 U.S.C. § 1367(a)").

      **B.     The Proposed Amendment States a Claim for Relief.**

As set forth in the Proposed Amendment, Title 29 of the Delaware Code sets forth the Delaware Administrative Procedures Act (APA or Act). The Act contains seven sub-chapters. 29 Del. C. § 10161 (subchapter VII) sets forth the "Application of Chapter." Sub-section (a) of section 10161 lists a variety of agencies that are covered by the preceding six subchapters. The DOC is not among those state agencies. However, subsection (b) states that "all agencies not listed in subsection (a) . . . shall only be subject to subchapters I and II of this chapter and §§ 10141, 10144 and 10145."

Subchapter I is entitled "Policy and Definitions." Section 10101 state that the purpose of the APA is to "specify the manner and extent to which action by [state] agencies may be subjected to public comment and judicial review."

Section 10102 (1) defines an "agency" as "any authority, **department** . . . or other unit of the state government authorized by law to make regulations . . ." Subsection (7) defines a covered "regulation" as "any statement of law, procedure, [or] policy." Between March 3, 1992 and the present, Defendants have promulgated at least two official DOC Policies, one Bureau of Prisons Procedure, and six Delaware Correctional Center Procedures related to executions by lethal injection. As such, through its various permutations, the regulation setting forth the execution protocol has been labeled as a Policy, a Procedure or as both a Policy and Procedure.

Subchapter II of the APA is titled "Agency Regulations" and it sets forth a precise scheme in which state agencies must engage when promulgating or amending a covered regulation. Section 10113 (a) states that "all regulations, except those specifically exempted, shall be adopted according to the requirements of this chapter." Sections 10115-10117 require that an agency provide public notice of its intent to promulgate or amend covered regulations, and such notice must be done by publication with the State's Registrar of Regulations and placed in the State's Register of Regulations. These sections also require that the public be advised as to how to present their views with respect to of the proposed regulations, how such written submissions are to be processed, and the conduct of public hearings. Section 10118 requires the department to issue findings based on the public comments as part of its decision to "adopt, amend or repeal" a given regulation.

As noted, 10161 (b) states that the above described scheme, i.e. Chapters I and II, applies to "all agencies" of the State of Delaware. Section 10161 (b) also states that all agencies are covered by section 10141(a) which states: "Any person aggrieved by and claiming the unlawfulness of any regulation may bring an action in Court for declaratory relief." Thus, the Plaintiff class has standing to challenge the lawfulness of any regulation. See O'Neill v. Town of Middletown, 2006 WL

205071 at *11 & n 96 (Del.Ch. Jan. 18, 2006)("Section 10161(b) agencies, however, are subject to, *inter alia*, the APA's provisions for limited judicial review of agency regulations," citing and quoting section 10141).

If the Plaintiff class were to seek judicial review in state court under § 10144(a), it would be entitled to a judgment declaring that Defendants have not complied with the APA's rulemaking scheme. Upon such a declaration, the rules would not be valid. Bernie's Conchs LLC v. Delaware Division of Natural Resources, 2007 WL 1732833 (Del.Super. June 8, 2007). Bernie's Conchs illustrates the remedy available to the Plaintiff class in state court, and therefore in this action under the Court's supplemental jurisdiction (28 U.S.C. § 1367). In Bernie's Conchs, the Delaware Division of Natural Resources initiated a "regulatory process" resulting in a two year moratorium on the harvesting of crabs. The plaintiffs brought an action in Superior Court seeking "a declaration . . . that the moratorium is invalid." Id. at *1. Notably, the Division of Natural Resources – like the Department of Correction – is a § 10161 (a) exempt agency. Thus, like the Department of Correction, its promulgation of regulations are subject to judicial review under § § 10161 (b) and 10144 (a). In requesting such review "the complaining party shall have the burden of proving either that the action was taken in a substantially unlawful manner . . . or that the regulation, where required, was adopted without a reasonable basis in the record or is otherwise unlawful." Id. at * 4.[2] After conducting this review in Bernie's Conchs, the Court found the moratorium "invalid." Id. at

---

[2]Had Defendants followed state law and published the procedure for public review and comment, there would have been an opportunity to determine whether the Department's procedures for lethal injection had a "reasonable basis in the record." That review presumably would have included a determination of some of the issues in this suit, such as whether the use of pancuronium bromide is appropriate, and whether those who are untrained in anesthesia should act as executioners.

\*1.

This Court should thus apply the APA to find that the regulations promulgated by Defendants with respect to lethal injection were promulgated in a "substantially unlawful manner" and are therefore void. In the context of this case, the regulations instead were promulgated in a "substantially unlawful manner," as there has been no allowance for public review and comment. Upon such a finding, it would be appropriate to enjoin the use of the procedures until such time as the Defendants come into compliance with the APA.

### D. The Department of Correction is Not Exempt from the Rulemaking Scheme of Title 29, Chapter II.

Plaintiffs have found no rule, case or directive exempting the DOC from the coverage of the rulemaking scheme set forth in Chapter II. The only remotely relevant statute that could be construed as exempting the DOC from the coverage of Chapter II is 11 Del. Code § 4322(d). While on its face this statute deems DOC Policies and Procedures to be confidential, the history and construction of this statute shows a more limited scope.

Section 4322(d) was passed in response to a *pro se* prisoner lawsuit requesting "personal copies" of various DOC policies and procedures. In Ross and Gattis v. Department of Corrections, 697 A.2d 377 (Del.Supr. 1997), two prisoners brought suit alleging an entitlement to personal copies of DOC disciplinary rules and access to DOC "operational regulations." The Delaware Supreme Court found that prisoners were squarely entitled to the disciplinary rules pursuant to then-existing 11 Del. Code § 6535. It remanded the case for further findings in regard to the second question of whether prisoners were entitled to review DOC "operational rules and regulations governing officer's conduct." Ross, 697 at 378.

Following remand, the matter was again before the Delaware Supreme Court on the prisoners' appeal. The Court noted that:

> In March of 1998 Ross and Gattis filed the present appeal with this Court. They challenge the Superior Court's denial of their request for a subpoena *duces tecum* and the denial of **their access to the Department's operational and administrative regulations.**

Ross and Gattis v. Department of Correction, 722 A.2d 813, 814 (Del.Supr. 1998). The Court then recounted that while the appeal was pending, the Delaware General Assembly amended 11 Del. Code § 6535 (regarding prisoners' right to a personal copy of disciplinary rules). It also noted that 11 Del. Code § 4322 was amended by the addition of two new subsections – "c" and "d" – which stated, respectively: c) that no inmate shall be provided a copy of DOC Policy and Procedures and d) that DOC policies and procedures "shall be confidential." Id.

Although there is little case law interpreting the amendments to section 4322, the authority that exists shows that the statutes and the amendments limit **only** prisoner access to Policy and Procedures. In Riley v. Taylor, 1999 WL 41279 at * 3 (Del.Super. 1999), the Superior Court dismissed the plaintiff's complaint seeking access to prison policies and procedures, explaining that the "recently amended language of Sections **4322(c) and (d) of Title 11 preclude prisoner access** to prison policies and procedures." See id. ("These policies and procedures fall within the scope of 11 Del. C. § 4322(c) and (d), and, under out State law, need not be supplied to prisoners."). Thus, the only state court decision addressing the scope of sub-section "d" held that it applied only to **prisoner** lack of access to the policies and procedures. Similarly, in Moody v. Kearney, 380 F.Supp.2d 393 (D.Del. 2005), this Court decided an equitable tolling claim made by a section 1983 prisoner claimant. The Court accepted the argument that the prisoner was entitled to equitable

tolling because he did not have access to prison records until he was assigned an attorney, thus underscoring that section 4322 limits only the access of prisoners to DOC materials.

The Delaware Freedom of Information Act (FOIA) provides further evidence that the confidentiality of prison policies and procedures under section 4322(d) applies only to prisoners and not the public-at-large. The FOIA's definition of a public record includes the types of "policies and procedures" that are at issue here.[3] The FOIA then specifies several types of records that "shall not be deemed public." 29 Del. C. § 10002(g). Included in the list of exempt records are "[a]ny records in the possession of the Department of Correction **where disclosure is sought by an inmate in the Department's custody**." Id. at § 10002(g)(13). Thus, when DOC records are sought by anyone other than "an inmate's in the Department's custody," the records are public. If section 4322(d) were read to apply to all disclosures of DOC procedures and policies, it would conflict with the FOIA. The only way section 4322 can be read not to conflict with the FOIA is that it applies only to prisoners.

Section 4322(d) applies only to prisoners in the custody of the DOC. However, even if it did apply to non-prisoners, the statute would not exempt the DOC from the rulemaking requirements of the APA. The APA applies to proposed regulations and amendments to regulations and requires that they be presented to the public for notice and comment as a precondition to becoming official regulations. Section 4322(d) by its terms applies only to existing regulations that have been through the rulemaking process, and, as to those duly-enacted regulations, permits the Department to

---

[3] A "public record is defined as "information of any kind, owned, made, used, retained, received, produced, composed, drafted or otherwise compiled or collected, by any public body, relating in any way to public business, or in any way of public interest, or in any way related to public purposes, regardless of the physical form or characteristic by which such information is stored, recorded or reproduced." 29 Del. C. § 10002(g).

maintain a degree of confidentiality. In short, the confidentiality permitted by section 4322(d) does not exempt the DOC from the notice-and-comment rulemaking of Chapters I & II.

Plaintiffs appreciate that some regulations promulgated by the Department would need to be kept confidential, as they could impact on the security and orderly conduct of a prison. Such regulations, policies or procedures, or portions of them, would certainly be exempt from the rulemaking requirement of Chapter II on a case-by-case basis. Obviously the DOC conducts many forms of business which are reflected in its policies and procedures. Some implicate security concerns and would properly be kept beyond the public view. However, others, for instance policies regarding negotiation of contracts with vendors, quite properly should be subject to scrutiny. In short, there is simply no statute, rule or decision exempting the DOC from having to comply with the rulemaking provisions of Chapter II.

## Conclusion

The Delaware Freedom of Information Act – a companion to the APA – summarizes why the Defendants ought to be required to comply with the APA's rulemaking scheme:

> It is vital in a democratic society that public business be performed in an open and public manner so that our citizens[4] shall have the opportunity to observe the performance of public officials and to monitor the decisions that are made by such officials in formulating and executing public policy; and further, it is vital that citizens have easy access to public records in order that the society remain free and democratic. Toward these ends, and to further the accountability of government to the citizens of this State, this chapter is adopted, and shall be construed.

29 Del. Code § 10001 "Declaration of Policy." There certainly are security aspects of the lethal injection policy and procedures that ought to be kept secret from the public (e.g. security around the

---

[4] The language of Delaware's FOIA limiting its scope to "citizens" of the State has been found unconstitutional. Lee v. Minner, 458 F.3d 194 (3d Cir. 2006).

perimeter of prison during an execution). However, it is beyond question that the manner in which executions are accomplished is very much "public business" that should be subject to rulemaking under the APA, with exceptions only for those aspects that implicate prison security. In short, the public has a right to know how its government goes about executing a prisoner condemned to death.

As the Proposed Amendment to the Complaint is filed in good faith, will cause neither the Court nor the Defendants any undue burden or prejudice, and presents an important issue that is far from frivolous, the *Motion to Amend* should be granted.

Respectfully Submitted,

/s/ Michael Wiseman

Maureen Kearney Rowley
Chief Federal Defender
By:  Michael Wiseman
Helen Marino
Megan McCracken
Assistant Federal Defenders
Federal Community Defender
for the Eastern District of Pennsylvania
Capital Habeas Corpus Unit
Suite 545 West – The Curtis Center
Philadelphia, PA 19106
215-928-0520

Counsel for the Class

Dated:  Wilmington, Delaware
        August 15, 2007

**Certificate of Service**

I, Michael Wiseman, hereby certify that on this 15th day of August, 2007 I served the foregoing upon the following persons by United States Mail, First Class, postage prepaid:

> Loren Myers, Esq.
> Gregory E. Smith, Esq.
> Elizabeth McFarlan, Esq.
> Marc Niedzielski, Esq.
> Deputy Attorney Generals
> 820 North French Street, 6th Floor
> Carvel State Building
> Wilmington, Delaware 19801

/s/ Michael Wiseman
_____
Michael Wiseman