# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROBERT JACKSON, et al. )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>CARL DANBERG, et al., )<br>)<br>Defendants. ) | Civ. A. No. 06-300-SLR |

### DEFENDANTS' MEMORANDUM RESPONSE TO
### PLAINTIFFS' LETTER BRIEF

As Plaintiffs acknowledge on page 5, footnote 7, of their letter brief, the United States Supreme Court has held that "punishment must not involve the **unnecessary and wanton infliction of pain**." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (emphasis added). Plaintiffs assert that "The question in a lethal injection action is whether Defendants' lethal injection protocol and its implementation creates a substantial and unnecessary risk of serious harm." *Letter br.* at 3, *citing Taylor v. Crawford*, 478 F.3d 1072, 1079 (8th Cir. 2007). The *Taylor* standard expressly acknowledges the *Gregg* standard and adds to *Gregg* the concept of foreseeable risk. The *Taylor* standard thus is a far cry from the "deliberate indifference to serious medical needs" standard that Plaintiffs' counsel articulated for the Court during the September 18, 2007 teleconference. Under the *Taylor* standard that Plaintiffs now ask this Court to adopt, the areas on which they insist discovery is necessary are in fact irrelevant. Nothing in *Taylor* goes to any individual's state of mind. Plaintiffs ignore that the *Taylor* standard is directed to whether the "**lethal injection protocol and its implementation creates a**

**substantial and unnecessary risk of serious harm.**" *Id.* (emphasis added). Other courts that have resolved similar litigation throughout the country have reached the same conclusion, focusing on the protocol. *See Hamilton v. Jones*, 472 F.3d 814, 817 (10th Cir. 2007); *Workman v. Bresden*, 486 F.3d 896, 907 (6th Cir. 2007); *Emmett v. Johnson*, 489 F.Supp.2d 543, 553 (E.D. Va. 2007).

Moreover, the instant complaint is a § 1983 action, but it is not one that seeks monetary damages against state actors in their individual capacities. The complaint seeks injunctive relief. It is the protocol and the future implementation of the protocol that the litigation challenges, as Plaintiffs acknowledge at page 2 of their letter brief. The Court made clear when it certified the matter as a class-action, that the litigation did not contain claims for money damages, and that class counsel could not seek fees as part of class certification. The deliberate indifference standard proposed by Plaintiffs on September 18 comes from cases where inmates sought money damages against state actors in their individual capacities for alleged indifference to past events and injunctive relief from future harm. *See, e.g., Farmer v. Brennan*, 511 U.S. 824, 837 (1994); *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997). *Farmer*'s deliberate indifference standard, including the subjective evaluation of a prison official's state of mind, only has application for the imposition of money damages. 511 U.S. at 837-38. Blurring the deliberate indifference standard in this litigation attempts to confuse the individual persons responsible for carrying out the execution protocol who can, and will change, with the protocol itself. It is the requirements of the protocol that are at issue in this litigation. Which state actors happen to be serving in various roles at the time of an execution is immaterial, and what any specific person thinks is likewise immaterial. The question is whether the manner in

which the State of Delaware has articulated its intention to carry out an execution by lethal injection creates a substantial and unnecessary risk of serious harm. *See Taylor*, 478 F.3d at 1079. Even more fundamentally, regardless of how insufficient Plaintiffs believe the changes to the protocol are, the changes facially only serve to minimize risk. Thus, any question that delves into "why did you do this; but why didn't you do that" is entirely irrelevant.

> Section 1983 does not empower this Court to "micromanage" Maryland's execution procedures. What might be done to improve the three-drug protocol is not the appropriate inquiry. A federal court must pay deference to the judgment of the state government, which, in the words of the Supreme Court, is presumed to have acted in a 'careful and humane manner.'

*Evans v. Saar*, 412 F. Supp. 2d 519, 523 (D. Md. 2006), *quoting Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459 (1947). The Eastern District of Virginia has likewise cautioned that

> It is not the office of a federal court to dictate to the Commonwealth of Virginia the precise methodology it employs in carrying out a lawful death sentence, as long as the **procedure** is constitutionally sound and does not subject the inmate to cruel and unusual punishment. Whether or not the **procedure** used should conform to prevailing standards of medical care, or whether there is a more humane execution procedure, is a decision to be made by the Virginia General Assembly and not this Court.

*Emmett*, 489 F. Supp. 2d at 548 (emphasis added).

The State of Ohio has been at the crossroads of the § 1983 lethal injection litigation battle. As a result of litigation, the Ohio Department of Corrections revised its lethal injection protocol. The new Ohio protocol did not make substantive changes to the three-drug protocol itself, but added numerous safeguards to its protocol. Against the backdrop of the new protocol, Ohio death-sentenced inmates argued that the revisions to

3

the protocol re-set the running of the statute of limitations for filing a § 1983 lawsuit. The Sixth Circuit rejected the Ohio inmates' position:

> As Defendants assert, none of these changes relates to Cooey's core complaints. Further, none of these areas were implicated as a basis for Cooey's expert's conclusion that the process presents a risk that Cooey will experience pain. Rather, Dr. Heath, Cooey's expert, criticized the use of pancuronium bromide, the use and dosage of sodium thiopental, the failure to provide a continuous dose of an ultra-short-acting barbiturate, and the lack of information regarding prison personnel's training to prepare and administer the drugs. Cooey cannot prevail on this basis either.

*Cooey v. Strickland*, 479 F.3d 412, 424 (6th Cir. 2007). The Sixth Circuit's reasoning is instructive here. If such remedial changes are not the basis to re-start the limitations period to file a lawsuit, those changes cannot serve as a basis to re-start discovery on an irrelevant issue of "why did you do this; but why didn't you do that." Plaintiffs cannot plausibly suggest that any change to the protocol (increasing the dose of anesthetic; installing a pan-tilt-zoom camera; requiring record keeping of chemical mixing and administration; mandating at least three training exercises by the execution team; waiting an additional two minutes after the anesthetic and saline flush before proceeding to the second chemical; requiring that IV team members be EMTs or paramedics; or expressly prohibiting the use of a cut-down to achieve venous access) is designed to *cause* suffering.

      Rule 26 provides that relevant, but privileged, matters are not discoverable. Fed. R. Civ. P. 26(b)(1). The purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or

advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981); *accord Rhone-Poulenc Rorer, Inc. v.Home Indem. Co.*, 32 F.3d 851, 862 (3d Cir. 1994). As the privilege serves the interests of justice, it is worthy of maximum legal protection. *Haines v. Liggett Group Inc.*, 975 F.2d 81, 90 (3d Cir. 1992). Moreover, it is essential that parties be able to determine in advance with a high degree of certainty whether communications will be protected by the privilege. *Upjohn Co.,* 449 U.S. at 393.

A party can waive the attorney-client privilege by putting his attorney's advice in issue in the litigation. *Rhone-Poulenc Rorer, Inc.*, 32 F.3d at 863. Further, a defendant may waive the privilege by asserting reliance on the advice of counsel as an affirmative defense. *Id*. (collecting cases). "Advice is not in issue simply because it is relevant, and does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in a relevant manner." *Id*. Unless the client takes an affirmative step in the litigation to place the advice of his or her attorney in issue, the privilege is not impliedly waived. *Id.*; *accord Oak Lane Printing & Letter Service v. Atlantic Mut. Ins. Co.*, 2007 WL 1725201, *3-4 (E.D. Pa.) "Advice of counsel is at issue only where a party attempts to prove its defense by disclosing attorney-client communications." *Oak Lane Printing & Letter Service,* 2007 WL 1725201 at *3 (citation omitted). Here, Defendants have not, nor do they intend to, assert any defense based on attorney-client communications. Consequently, Plaintiffs' request for disclosure of privileged communications and work product should be denied.

Plaintiffs stated in their September 3, 2007 letter, "we do not believe that the changes between the old and new protocols will have an impact on the ultimate Eighth Amendment issues that will be tried." With that view of the changes to the Delaware protocol, Plaintiffs are hard-pressed to now argue any inquiry into the decision-making process is necessary. Accordingly, Defendants respectfully urge the Court to approach this litigation with only one question in mind: Does the Delaware protocol create a substantial and unnecessary risk of serious harm? The Plaintiffs' request to inquire into the attorney-client discussions concerning the new protocol -- changes that Plaintiffs themselves do not believe will have an impact on their ultimate Eighth Amendment claim -- should therefore be denied.

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

/s/ Loren C. Meyers, ID No. 2210
Chief of Appeals Division

Gregory E. Smith, ID No. 3869
Elizabeth R. McFarlan, ID No. 3759
Deputy Attorneys General
Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 577-8500

**CERTIFICATION OF SERVICE**

The undersigned certifies that on September 20, 2007, he electronically filed the attached *Response to Plaintiffs' Letter Brief* with the Clerk of Court using CM/ECF which will send notification of such filing to the following registered participant:

Michael Wiseman, Esq.
Assistant Federal Defender
Suite 545 West—The Curtis Center
Philadelphia, PA  19106
Attorney for Robert Jackson

                                    STATE OF DELAWARE
                                    DEPARTMENT OF JUSTICE

                                    /s/ Gregory E. Smith
                                    Gregory E. Smith, ID # 3869
                                    Deputy Attorney General
                                    820 North French Street, 7th Floor
                                    Carvel State Building
                                    Wilmington, Delaware 19801
                                    (302) 577-8398