IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROBERT W. JACKSON, III, | : | **Civil Action No.** |
| | : | 06-CV-300 |
| Plaintiff, | : | |
| | : | United States District Judge |
| -against- | : | Sue L. Robinson |
| | : | |
| CARL C. DANBERG, et al., | : | Electronically Filed |
| | : | |
| Defendants. | : | |
| | : | **CLASS ACTION** |

**PLAINTIFFS' BRIEF REPLY TO DEFENDANTS'**
***STATEMENT OF THE ISSUES***

Plaintiffs submit this brief *Reply* to the Defendants' *Statement of Issues* (hereafter, *SOI*) to address four points.

1.    Defendants continue to suggest that this case is appropriate for summary judgment.  It is not.  Defendants' submission glosses over the various factual differences between the protocols, which are pointed out in Plaintiffs' *Pre-Trial Submission* (hereafter, *PTS*).  For instance, Defendants assert that Delaware's two minute waiting period is the equivalent of Kentucky's consciousness check. Factually, this is incorrect.  Whether Delaware's two-minute waiting period is an equivalent mechanism to Kentucky's consciousness check for determining whether the prisoner is unconscious before painful drugs are administered (the core risk of the

three-drug protocol, as recognized in <u>Baze</u>), particularly in light of other provisions in Delaware's protocol, is a matter that ought to be the subject of expert testimony.[1]

2.     Contrary to Defendants' assertions, expert testimony will not be directed at determining whether <u>Baze</u> was correct (*SOI* at 7). Rather, the experts will be called upon to address the significance of the differences between Kentucky's protocol and the distinctly different Delaware protocol; whether, in light of those differences, Delaware's protocol presents a substantial risk of serious harm to the inmate; and whether a one-drug protocol is a readily available alternative that reduces the risk of serious harm to the inmate.

3.     Contrary to Defendants' assertions, Plaintiffs did propose an alternative method. When they answered the interrogatory cited by Defendants (*SOI* at 5-6), Plaintiffs suggested that the acceptable alternative to the three drug protocol is the one drug method of the AVMA, which is recommended for the euthanization of

---

[1] Defendants – in both their narrative and chart (Exhibit C) – have also ignored other factual differences. See *PTS* at 7-13 (no limit on time to establish peripheral access); at 14-17 (differences in IV team credentials); at 17-18 (differences in practice requirements); at 18-19 (lack of contingencies in event of stay); at 20-21 (differences in IV tube length and remoteness of IV team); at 21-23 (lack of pre-execution medical and psychiatric checks); at 23-32 (various *de facto* differences). These are also proper subjects for expert testimony.

Plaintiffs also submit that the Court ought not decide summary judgement without the filing of a formal motion, with an opportunity for Plaintiffs to answer it.

larger animals. The fact that the Supreme Court – on the inadequate record before it – did not accept the AVMA as an appropriate point of comparison for lethal injection is not the point (*SOI* at 6); the point here is that Plaintiffs did suggest, and continue to suggest, that the one-drug protocol, in which a massive overdose of a barbiturate is administered, would avoid the risk of suffering uniquely associated with the three-drug method. <u>Baze</u> recognizes that a state's failure to adopt a known and available alternative can constitute cruel and unusual punishment, <u>Baze</u>, 128 S.C. at 1532.[2]

4.      Finally, Defendants' assertion that this Court may not consider expert testimony related to risk is misleading. *SOI* at 8. The <u>Baze</u> caution against "weighing of relative risks" is mentioned in the context of considering alternative methods of execution, which is an inquiry divorced from whether the current method poses a substantial risk of inflicting pain and suffering. There is nothing in <u>Baze</u> suggesting that expert testimony is irrelevant to determining whether a particular procedure is likely to cause pain and suffering.

---

[2] Just yesterday, the Court of Common Pleas of Lorain County Ohio found that a one drug protocol, using only Thiopental, "will cause death to the condemned rapidly . . . without the risk of causing an agonizing or excruciatingly painful death or of causing the condemned person the anxiety of anticipating a painful death." <u>See</u> <u>Ohio v. Rivera</u>, (CCP, Lorain Co., Ohio) slip opinion, June 10, 2008, at 8 (copy attached).

Respectfully Submitted,

/s/ Michael Wiseman
_____
Michael Wiseman
Helen A. Marino
Maria K. Pulzetti
Capital Habeas Corpus Unit
Federal Community Defender Office
for the Eastern District of Pennsylvania
Suite 545 West – The Curtis Center
Philadelphia, PA 19106
215-928-0520

Dated:    Philadelphia, PA
          June 11, 2008

## Certificate of Service

I, Michael Wiseman, hereby certify that on this 11th day of June, 2008 I served the foregoing upon the following persons by e-mail and United States Mail:

Gregory E. Smith, Esq.
Elizabeth McFarlan, Esq.
Marc P. Niedzielski, Esq.
Office of the Attorney General
820 North French Street, 6th Floor
Carvel State Building
Wilmington, Delaware 19801

/s/ Michael Wiseman
_____
Michael Wiseman

# FAX COVER PAGE

From the Office of Judge James M. Burge
Lorain County Justice Center
225 Court Street, 7th floor
Elyria, Ohio 44035
Phone: 440-329-5416
FAX: 440-329-5712

SENT BY: Jackie

To: Atty Gamso
At:
Fax #: 216-472-2210

Total pages including this cover page: 10

RE: State v Rivera
    McCloud

SPECIAL INSTRUCTIONS:

FILED
LORAIN COUNTY

2008 JUN 10 A 9: 41

CLERK OF COMMON PLEAS
RON NABAKOWSKI

**LORAIN COUNTY COURT OF COMMON PLEAS**
**LORAIN COUNTY, OHIO**

RON NABAKOWSKI, Clerk
**JOURNAL ENTRY**
**James M Burge, Judge**

Date _June 10, 2008_    Case No. 04CR065940
                                      05CR068067

STATE OF OHIO                         LORAIN COUNTY PROSECUTOR
Plaintiff                             Plaintiff's Attorney

VS

RUBEN O. RIVERA                       KREIG J BRUSNAHAN
RONALD MCCLOUD                        DANIEL WIGHTMAN
Defendant                             Defendant's Attorney   (440) 930-2600

## JUDGMENT ENTRY

### The Case

These causes came on to be heard upon the motion filed by each defendant, challenging the Ohio lethal injection protocol as constituting cruel and unusual punishment, proscribed by the Eighth Amendment to the United States Constitution and by Section 9, Article 1 of the Ohio Constitution.

Defendants argue further that the Ohio lethal injection protocol violates the very statute which mandates that executions in Ohio be carried out by lethal injection, R.C.2949.22. Defendants claim that the three-drug protocol currently approved for use by the Ohio Department of Rehabilitation and Correction violates R.C.2949.22 because the drugs used create an unnecessary risk that the condemned will experience an agonizing and painful death. Defendants argue that the use of this protocol is contrary to the language of the statute, which mandates that the method of lethal injection cause death "quickly and painlessly." Defendants maintain that the use of this three-drug protocol arbitrarily abrogates the condemned person's statutorily created, substantive right to expect and to suffer a painless execution.

The state of Ohio has responded that the current lethal injection protocol conforms to the statute because death is caused quickly, and unless an error is made in conducting the execution, which the state claims is extremely unlikely the drugs used will cause a painless death.

The court conducted hearings over two days and heard expert testimony from the defense (Mark Heath, M.D.) and from the state (Mark Dershwitz, M.D.). After reviewing the reports of the physicians, together with other written materials submitted with each

1

report, and after evaluating the testimony provided by each physician, the court makes the following findings of fact, draws the following conclusions of law, and enters its judgment accordingly.

### Findings of Fact

1. The state of Ohio uses a three-drug lethal injection protocol consisting of sodium thiopental, pancuronium bromide and potassium chloride, administered in the above order, as follows:

    A. sodium thiopental: 40 cc;
    B. sodium thiopental: 40 cc;
    C. saline flush: 20 cc;
    D. pancuronium bromide: 25 cc;
    E. pancuronium bromide: 25 cc;
    F. saline flush: 20 cc;
    G. potassium chloride: 50 cc;
    H. saline flush: 20 cc.

2. The properties of the above drugs produce the following results:

    A. sodium thiopental – anesthetic;
    B. pancuronium bromide – paralytic;
    C. potassium chloride – cardiac arrest.

3. The issue of whether an execution is painless arises, in part, from the use of pancuronium bromide, which will render the condemned person unable to breath, move, or communicate:

    "…it does not affect our ability to think, or to feel, or to hear, or anything, any of the senses, or any of our intellectual processes, or consciousness. So a person who's given pancuronium…would be wide awake, and - - but looking at them, you would - - they would look like they were peacefully asleep…But they would, after a time, experience intense desire to breathe. It would be like trying to hold one's breathe. And they wouldn't be able to draw a breath, and they would suffocate." (Heath, Tr. 72)

    …

    "Pancuronium also would kill a person, but again, it would be excruciating. I wouldn't really call it painful, because I don't think being unable to breathe exactly causes pain. When we hold our breath it's clearly agonizing, but I wouldn't use the word "pain" to describe that. But clearly, an agonizing death would occur." (Heath, Tr. 75)

2

4.  The second drug in the lethal injection protocol with properties which cause pain is potassium chloride. The reason is that before stopping the heart,

    "it gets in contact with nerve fibers, it activates the nerve fibers to the maximal extent possible, and so it will activate pain fibers to the maximal extent that they can be activated. And so concentrated potassium causes excruciating pain in the veins as it travels up the arms and through the chest." (Heath, Tr. 73)

5.  Based upon the foregoing, and upon the agreement of the expert witnesses presented by each party, the court finds that pancuronium bromide and potassium chloride will cause an agonizing or an excruciatingly painful death, if the condemned person is not sufficiently anesthetized by the delivery of an adequate dosage of sodium thiopental.

6.  The following causes will compromise the delivery of an adequate dosage of sodium thiopental:

    A. the useful life of the drug has expired;
    B. the drug is not properly mixed in an aqueous solution;
    C. the incorrect syringe is selected;
    D. a retrograde injection may occur where the drug backs up into the tubing and deposits in the I.V. bag;
    E. the tubing may leak;
    F. the I.V. catheter may be improperly inserted into a vein, or into the soft issue;
    G. the I.V. catheter, though properly inserted into a vein, may migrate out of the vein;
    H. the vein injected may perforate, rupture, or otherwise leak.

7.  The court fines further that:

    A.  It is impossible to determine the condemned person's depth of anesthesia before administering the agonizing or painful drugs, in that medical equipment supply companies will not sell medical equipment to measure depth of anesthesia for the purpose of carrying out an execution;

    B.  Physicians will not participate in the execution process, a fact which results in the use of paraprofessionals to mix the drugs, prepare the syringes, run the I.V. lines, insert the heparin lock (catheter) and inject the drugs; and,

3

    C.     The warden of the institution is required to determine whether the condemned person is sufficiently anesthetized before the pancuronium bromide and the potassium chloride are delivered, and the warden is not able to fulfill his duty without specialized medical equipment.

8. The experts testifying for each party agreed, and the court finds that mistakes are made in the delivery of anesthesia, even in the clinical setting, resulting in approximately 30,000 patients per year regaining consciousness during surgery, a circumstance which, due to the use of paralytic drugs, is not perceptible until the procedure is completed.

9. The court finds further that the occurrence of the potential errors listed in finding no. 6, *supra,* in either a clinical setting or during an execution, is not quantifiable and, hence, is not predicable.

10. Circumstantial evidence exists that some condemned prisoners have suffered a painful death, due to a flawed lethal injection; however, the occurrence of suffering cannot be known, as post-execution debriefing of the condemned person is not possible.

## Conclusions of Fact

1. Pancuronium bromide prevents contortion or grotesque movement by the condemned person during the delivery of the potassium chloride, which also prevents visual trauma to the execution witnesses should the level of anesthesia not be sufficient to mask the body's reaction to pain. Pancuronium is not necessary to cause death by lethal injection.

2. Potassium chloride hastens death by stopping the heart almost immediately. Potassium chloride is not necessary to cause death by lethal injection.

3. The dosage of sodium thiopental used in Ohio executions (2 grams) is sufficient to cause death if properly administered, though death would not normally occur as quickly as when potassium chloride is used to stop the heart.

4. If pancuronium bromide and potassium chloride are eliminated from the lethal injection protocol, a sufficient dosage of sodium thiopental will cause death rapidly and without the possibility causing pain to the condemned.

4

A.   Executions have been conducted where autopsy results showed that cardiac arrest and death have occurred after the administration of sodium thiopental, but before the delivery of pancuronium bromide and potassium chloride.

B.   In California, a massive dose (five grams) of sodium thiopental are used in the lethal injection protocol.

### Conclusions of Law

1.   Capital punishment is not per se cruel and unusual punishment, prohibited by the Eighth Amendment to the United States Constitution and by Section 1, Article 9 of the Ohio Constitution. Gregg v. Georgia (1976), 428 U.S. 153,187 (FN5.); State v. Jenkins (1984), 15 Ohio St. 3d 164, 167-169.

2.   Capital punishment administered by lethal injection is not per se cruel and unusual punishment, prohibited by the Eighth Amendment to the United States Constitution and by Section 1, Article 9 of the Ohio Constitution. Baze v. Rees (2008), 128 S. Ct. 1520, 1537-1538.

3.   The Ohio statute authorizing the administration of capital punishment by lethal injection, R.C.2949.22, provides, in relevant part, as follows:

   "(A) Except as provided in division (C) of this section, a death sentence shall be executed by causing the application to the person, upon whom the sentence was imposed, of *a lethal injection of a drug or combination of drugs of sufficient dosage to quickly and painlessly cause death.* The application of the drug or combination of drugs shall be continued until the person is dead..." (emphasis supplied)

4.   The purpose of division (A), *supra*, is to provide the condemned person with an execution which is "quick" and "painless;" and the legislature's use of the word, "shall," when qualifying the state's duty to provide a quick and painless death signifies that the duty is mandatory.

5.   When the duty of the state to the individual is mandatory, a property interest is created in the benefit conferred upon the individual, i.e. "Property interests...are created and their dimensions are defined by existing *rules* or understandings that *stem from an independent source such as state law rules*...that secure certain benefits and that support claims of entitlement to those benefits." Board of Regents of State Colleges v. Roth (1972), 408 U.S. 564, 577 (emphasis supplied).

6. If a duty from the state to a person is mandated by statute, then the person to whom the duty is owed has a substantive, property right to the performance of that duty by the state, which may not be "arbitrarily abrogated." Wolf v. McDonnell (1974), 418 U.S. 539, 557.

7. The court holds that the use of two drugs in the lethal injection protocol (pancuronium bromide and potassium chloride) creates an unnecessary and arbitrary risk that the condemned will experience an agonizing and painful death. Thus, the right of the accused to the expectation and suffering of a painless death, as mandated by R.C.2949.22(A), is "arbitrarily abrogated."

8. The court holds further that the words, "quickly and painlessly," must be defined according to the rules of grammar and common usage, and that these words must be read together, in order to accomplish the purpose of the General Assembly in enacting the statute, i.e. to enact a death penalty statute which provides for an execution which is painless to the condemned. R.C.1.42, 1.47.

9. The parties have agreed and the court holds that the word, "painless," is a superlative which cannot be qualified and which means "without pain."

10. The word, "quickly," is an adverb that always modifies a verb, in this case, the infinitive form of the verb, "to be." It describes the rate at which an action is done. Thus, the meaning of the word, "quickly," is relative to the activity described: to pay a bill "quickly" could mean, "by return mail;" to respond to an emergency "quickly," could mean, "immediately." Hence, the word "quickly" in common parlance means, "rapidly enough to complete an act, and no longer."

11. Therefore, the court holds that when the General Assembly, chose the word, "quickly," together with the word, "painlessly," in directing that death by lethal injection be carried out "quickly and painlessly," the legislative intent was that the word, "quickly," mean, "rapidly enough to complete a painless execution, but no longer."

12. This holding, supra, is consistent with the legislature intent that the death penalty in Ohio be imposed without pain to the condemned, the person for whose benefit the statute was enacted, but that the procedure not be prolonged, a circumstance that has been associated with protracted suffering.

13. Further, because statutes defining penalties must be construed strictly against the state and liberally in favor of the accused (condemned), the court holds that any interest the state may have, if it has such an interest,

6

in conducting an execution "quickly," i.e. with a sense of immediacy, is outweighed by the substantive, property interest of the condemned person in suffering a painless death. R.C.2901.04(A).

14. Thus, because the Ohio lethal injection protocol includes two drugs (pancuronium bromide and potassium chloride) which are not necessary to cause death and which create an unnecessary risk of causing an agonizing or an excruciatingly painful death, the inclusion of these drugs in the lethal injection protocol is inconsistent with the intent of the General Assembly in enacting R.C.2949.22, and violates the duty of the Department of Rehabilitation and Correction, mandated by R.C.2949.22, to ensure the statutory right of the condemned person to an execution without pain, *and to an expectancy that his execution will be painless.*

15. As distinguished from this case, the Kentucky lethal injection statute has no mandate that an execution be painless, Ky. Rev. Stat. Am. §431.220(1)(a). Thus, the analysis of that statute, having been conducted under the Eighth Amendment "cruel and unusual" standard, is not applicable here because "...the [U.S.] Constitution does not demand the avoidance of all risk of pain in carrying out executions." Baze, supra, 128 S. Ct. at 1529. In contrast, the court holds that R.C.2949.22 demands the avoidance of any unnecessary risk of pain, and, as well, any unnecessary expectation by the condemned person that his execution may be agonizing, or excruciatingly painful.

16. The purpose of R.C.2949.22 is to insure that the condemned person suffer only the loss of his life, and no more.

17. The mandatory duty to insure a painless execution is not satisfied by the use of a lethal injection protocol which is painless, assuming no human or mechanical failures in conducting the execution.

18. The use of pancuronium bromide and potassium chloride is ostensibly permitted because R.C.2949.22 permits "a lethal injection of a drug or combination of drugs."

19. However, as set forth *supra*, the facts established by the evidence, together with the opinions expressed by the experts called to testify by each party, compel the conclusion of fact that a single massive dose of sodium thiopental or another barbiturate or narcotic drug will cause certain death, reasonably quickly, and with no risk of abrogating the substantive right of the condemned person to expect and be afforded the painless death, mandated by R.C.2949.22.

7

### Analysis

1. The court begins its analysis of R.C.2949.22 with the presumption of its compliance with the United States and Ohio Constitutions, and that the entire statute is intended to be effective. R.C.1.47(A),(B). However, the court holds that the phrase, "or combination of drugs," ostensibly permits the use of substances which, *de facto*, create an unnecessary risk of causing an agonizing or an excruciatingly painful death.

2. This language offends the purpose of the legislature in enacting R.C.4929.22, and thus, deprives the condemned person of the substantive right to expect and to suffer an execution without the risk of suffering an agonizing or excruciatingly painful death.

3. The court holds, therefore, that the legislature's use of the phrase, "or combination of drugs," has proximately resulted in the arbitrary abrogation of a statutory and substantive right of the condemned person, in a violation of the Fifth and Fourteenth Amendments to the United Constitution and Section 16, Article 1 of the Ohio Constitution (due process clause).

### Remedy

1. R.C.1.50, however, allows the court to sever from a statute that language which the court finds to be constitutionally offensive, if the statute can be given effect without the offending language. Geiger v. Geiger (1927), 117 Ohio St. 451, 466.

2. The court finds that R.C.2949.22 can be given effect without the constitutionally offense language, and further, that severance is appropriate. State v. Foster (206), 109 Ohio St. 3d. 1, 37-41.

3. Thus, the court holds that the words, "or a combination of drugs," may be severed from R.C.2949.22; that the severance will result in a one-drug lethal injection protocol under R.C.2949.22; that a one-drug lethal injection protocol will require the use of an anesthetic drug, only; and, that the use of a one-drug protocol will cause death to the condemned person "rapidly," i.e. in an amount of time sufficient to cause death, without the unnecessary risk of causing an agonizing or excruciatingly painful death, or of causing the condemned person the anxiety of anticipating a painful death.

8

### Holding

4. Therefore, the holds that severance of the words, "or combination of drugs," from R.C.2949.22 is necessary to carry out the intent of the legislature and thus, to cure the constitutional infirmity.

### ORDER

Accordingly, it is ordered that the words, 'or combination of drugs," be severed from R.C.2949.22; that the Ohio Department of Rehabilitation and Correction eliminate the use of pancuronium bromide and potassium chloride from the lethal injection protocol; and, if defendants herein are convicted and sentenced to death by lethal injection, that the protocol employ the use of a lethal injection of a single, anesthetic drug.

It is so ordered.

*Honorable Judge James M. Burge*

I HEREBY CERTIFY THIS TO BE A TRUE COPY OF THE ORIGINAL ON FILE IN THIS OFFICE.

RON NABAKOWSKI, LORAIN COUNTY CLERK OF THE COURT OF COMMON PLEAS

BY *Barbara Pashva* DEPUTY

9