IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROBERT W. JACKSON, III, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civ. No. 06-300-SLR |
| | ) | **CLASS ACTION** |
| CARL C. DANBERG, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM ORDER**

At Wilmington this 27th day of July, 2011, having reviewed the pending motions

to stay and to reopen and the papers submitted in connection therewith, and having

heard oral argument on same;

IT IS ORDERED that plaintiffs' motion to stay the execution of named plaintiff

Robert W. Jackson, III (D.I. 156) is denied, for the reasons that follow:

1. **Background.** In 2009, the court granted defendants' motion for summary

judgment, finding that Delaware had revised its lethal injection protocol ("the protocol")

to conform with that sanctioned by the United States Supreme Court in *Baze v. Rees*,

553 U.S. 35 (2008). Specifically, plaintiffs had not demonstrated that there was a

substantial risk of an inadequate dose of sodium thiopental being administered under

the protocol, sodium thiopental (an anesthetic) being the first of three drugs

administered under the protocol. *Jackson v. Danberg*, 601 F. Supp.2d 589, 598-99 (D.

Del. 2009). Plaintiffs had argued in this regard that, without an adequate dose of an

anesthetic being administered as the first drug, the administration of the final two drugs was sure or very likely to cause needless suffering.

2. Since the entry of judgment against plaintiffs, sodium thiopental is no longer produced in the United States and there is no legal way for States to obtain it from overseas. (D.I. 142 at 2) On May 5, 2011, the State of Delaware changed the protocol to add a new drug, pentobarbital, as an alternative to sodium thiopental for use as the first drug in the protocol. The purpose of the first drug is to induce a state of unconsciousness in the condemned prisoner. *Baze*, 553 U.S. at 44.

3. Plaintiffs have moved to reopen the judgment entered in 2009 pursuant to Fed.R.Civ.P. 60(b)(6) and Rule 60(d). Plaintiffs contend that the substitution of pentobarbital for sodium thiopental is a factual change which undermines the foundations of the prior ruling, thus constituting exceptional circumstances (under Rule 60(b)(6)) and/or circumstances that call for independent action in order to prevent a grave miscarriage of justice (under Rule (60(d)).

4. Oral argument was conducted this same date. (D.I. 164) Plaintiff Jackson's execution is scheduled to occur on Friday, July 29, 2011.

5. **Motion to stay.** The Supreme Court has held that a death row inmate may challenge the constitutionality of execution methods pursuant to a 42 U.S.C. § 1983 action; however, a stay "is not available as a matter of right," even where execution is imminent. *Hill v. McDonough*, 547 U.S. 573, 584 (2006). A "stay of execution is an equitable remedy" and "equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from federal courts." *Id.*

2

Moreover, the "victims of crime have an important interest in the timely enforcement of a sentence." *Id.*

6. A "death row inmate is afforded no preferential treatment by his filing a motion to stay, and all requirements for a stay must be satisfied." *Powell v. Thomas,* __ F. Supp.2d __, 2011 WL 1843616 at *2 (M.D. Ala. May 16, 2011). Accordingly, to warrant the imposition of a stay, it is the death row inmate's burden to demonstrate: (a) a substantial likelihood of success on the merits; (b) irreparable harm; (c) the balance of harms weighs in his favor; and (d) the entry of relief would serve the public interest. *DeYoung v. Owens,* __ F.3d __, 2011 WL 2899704 at *3 (11th Cir. 2011). According to the Supreme Court in *Baze,* a stay of execution may not be granted under the circumstances at bar "unless the condemned prisoner establishes that the State's lethal injection protocol creates a demonstrated risk of severe pain. He must show that the risk is substantial when compared to the known and available alternatives." *Baze,* 553 U.S. at 61.

7. **Likelihood of success.** Plaintiffs argue in this regard that pentobarbital is not used clinically as an anesthetic and, therefore, there is no clinical experience to inform its use in the execution setting. According to plaintiffs, the effects of pentobarbital are "unknown and unpredictable," specifically as to the "unknown manner and timing by which pentobarbital will render a subject insensible to serious pain." (D.I. 163 at 3) Because pentobarbital and sodium thiopental (which is used clinically as an anesthetic) have different mechanism of actions, a mere substitution of drugs in the protocol is constitutionally inadequate.

3

8. As evidence to support the above arguments, plaintiffs have proffered the expert opinion of Dr. David B. Waisel. Dr. Waisel opines that "[t]he primary problem [with lethal injection protocols] is inadequate anesthesia most commonly from inadequate physical and technical ability of the execution team members to assess anesthetic depth prior to injecting [the final two drugs,] pancuronium bromide and potassium chloride." (D.I. 154, ex. 2 at 5) According to Dr. Waisel, the above problem is compounded with the use of pentobarbital because there are "significant unknowns from a lack of clinical history related to using pentobarbital to induce anesthesia." (*Id.* at 4)[1] Dr. Waisel buttresses the above opinions with the observations of several eyewitnesses to two executions, that of Eddie Duval Powell in Alabama and of Roy Willard Blankenship in Georgia. According to these eyewitness accounts, both Powell and Blankenship displayed violent body motions as the lethal injection commenced; Blankenship's eyes were open during the entirety of the lethal injection process. According to Dr. Waisel, "likely reasons for these events include that the pentobarbital did not work as the state claimed it would work or that the pentobarbital was not successfully delivered . . . ." (*Id.* at 6) Dr. Waisel concludes that, "to date, pentobarbital has been used in 16 reported executions utilizing the three-drug sequence. The fact that executions of 16 inmates have generated 2 reports of botched executions underscores the fact that we do not have sufficient data for the safety, efficacy or

---

[1]Dr. Thomas K. Henthorn, a practicing anesthesiologist, averred in this regard that because, in a clinical setting, pentobarbital is administered after a person has already been rendered unconscious, "pentobarbital has not been sufficiently tested to render an entirely conscious human adult unconscious." (D.I. 161, ex. 7)

reliability of pentobarbital as used to induce anesthesia for lethal injection." (*Id.*; *see also* D.I. 161, ex. 6)

9. In opposition, defendants proffer the following for the court's consideration. To date, the Supreme Court "has never invalidated a State's chosen procedure for carrying out a sentence of death as the infliction of cruel and unusual punishment." *Baze*, 553 U.S. at 53. More specifically to the dispute at bar, no court has held that the administration of pentobarbital violates the Eighth Amendment. Indeed, in denying a stay of execution in *DeYoung v. Owens*, 2011 WL 2899704, the Eleventh Circuit addressed the very evidence proffered by plaintiffs at bar. Significantly, the Eleventh Circuit found that, even assuming Dr. Waisel correctly interpreted the varying eyewitness accounts of the Blankenship execution to show that Blankenship's movement occurred during the administration of the pentobarbital, Dr. Waisel still could not provide "a medical explanation for why pentobarbital might have caused Blankenship pain" or for how long. *Id.* at *5. According to the Court, "[i]t is clear that Blankenship's execution did not proceed to the second drug until after he was fully unconscious," consistent with Georgia's protocol. *Id.* at *6. The Eleventh Circuit concluded in this regard that DeYoung "ha[d] wholly failed to show that pentobarbital, once fully administered and allowed to act, is ineffective as an anesthetic;" therefore, "Georgia's 'use of pentobarbital does not create a substantial risk of serious harm to inmates.'" *Id.* at *5-6.

10. The Tenth Circuit in *Pavatt v. Jones*, 627 F.3d 1336 (10th Cir. 2010), concluded that the district court had not abused its discretion in denying an inmate's

5

motion to stay based upon the testimony of Dr. Mark Dershwitz, whose deposition has

been made part of the record at bar. (D.I. 154, ex. 4) According to the Tenth Circuit,

> [a]lthough [plaintiff's] expert witness, Dr. Waisel, expressed concern that
> there was insufficient data to allow the ODC [Oklahoma Department of
> Corrections] to determine the proper amount of pentobarbital to use as part
> of its protocol, it was by no means clear error for the district court to find that
> Dr. Deshwitz, who has substantially more clinical experience with the use of
> pentobarbital than Dr. Waisel, persuasively rejected those concerns as
> unfounded. The district court likewise committed no clear error in finding
> that the amount of pentobarbital selected for use by the ODC as part of its
> protocol was sufficient to induce unconsciousness in an inmate and, indeed,
> would likely be lethal in most, if not all, instances.

*Id.* at 1340.

11. Delaware's protocol calls for the administration of five grams of

pentobarbital; a consciousness check after two minutes have elapsed; and the

administration of a second dose of pentobarbital if the inmate was still conscious after

two minutes. (D.I. 164 at 41) The final two drugs are not administered if the inmate is

not unconscious. Dr. Dershwitz has opined that five grams of pentobarbital is a lethal

dose.

12. The court concludes that plaintiffs have not carried their burden to prove that

they are likely to succeed on the merits of their Eighth Amendment claim. At best, Dr.

Waisel has raised concerns about the mechanism of action of pentobarbital.[2] The

undisputed facts of record demonstrate, however, that pentobarbital has passed

constitutional muster in all reviewing courts to date and will be administered in lethal

---

[2]It is interesting to note that Dr. Waisel is comfortable opining that the cause of
the body movements witnessed in the Powell and Blankenship executions was
pentobarbital and that those body movements prove that the inmates were suffering
pain, despite the fact that the effects of pentobarbital are "unknown and unpredictable,"
according to Dr. Waisel.

doses in Delaware. According to Delaware's protocol, the final two drugs of the three-drug protocol will not be administered until the inmate is found to be unconscious. There has been no affirmative evidence presented[3] that the administration of pentobarbital as the first drug in Delaware's three-drug protocol creates a demonstrated risk of severe pain, as required by the Supreme Court. *Baze*, 553 U.S. at 61.

13. **Irreparable harm.** Irreparable harm, in the context of the death penalty, cannot mean the fact of death, as such an interpretation would make analysis of this factor meaningless. Rather, the irreparable harm that must be addressed is the manner of death, consistent with the Eighth Amendment's proscription against cruel and unusual punishment. In this regard, because plaintiffs have not carried their burden to prove that the administration of pentobarbital is sure or very likely to cause needless suffering, they cannot demonstrate irreparable harm.

14. **Balance of harms.** Defendants must carry out the mandates of the State Courts to execute plaintiff Jackson and have engaged their administrative process to do so, at some expense. Plaintiffs, of course, have a strong interest in ensuring that executions in Delaware are carried out consistent with the mandate of the Constitution, as interpreted by the Supreme Court, to avoid the risk of their suffering needlessly. In this regard, however, the Supreme Court has recognized that "[s]ome risk of pain is inherent in any method of execution - no matter how humane - if only from the prospect of error in following the required procedure. It is clear, then, that the Constitution does

---

[3]The court finds that discovery of the kind routinely undertaken in civil litigation is unlikely to further illuminate the issue at bar, that is, whether and when the administration of pentobarbital induces a state of unconsciousness.

not demand the avoidance of all risk of pain in carrying out execution." *Baze*, 553 U.S. at 46. Given the record at bar, this factor does not weigh in either parties' favor.

15. **Public interest.** There is an acknowledged strong public interest in bringing local criminal cases to closure, without undue interference from the federal courts. Plaintiff Jackson was convicted nearly 20 years ago, a fact that speaks for itself. The public also has a strong interest in having the State carry out its executions with seriousness and respect, consistent with the Eighth Amendment. Because there is no evidence that the State of Delaware is not approaching the execution of plaintiff Jackson with seriousness and respect, this factor weighs in favor of defendants.

IT IS FURTHER ORDERED that plaintiffs' motion to reopen (D.I. 142) is denied, for the reasons that follow:

16. **Standard of review.** To obtain relief for a claim under Rule 60(b)(6), a movant must show "extraordinary circumstances" justifying the reopening of a final judgment. *Ackerman v. United States*, 340 U.S. 193, 203 (1950). The party seeking relief bears the burden of showing that absent such relief, an "extreme" and "unexpected" hardship will result. *United States v. Swift & Co.*, 286 U.S. 106, 119 (1932). Rule 60(d) allows a court to "entertain an independent action to relieve a party from a judgment." Fed.R.Civ.P. 60(d)(1). An independent action is "available only to prevent a grave miscarriage of justice." *United States v. Beggerly*, 524 U.S. 38, 47 (1998). A "grave miscarriage of justice" is a "stringent" and "demanding" standard. *Gottleib v. S.E.C.*, 310 Fed. Appx. 424, 425 (2d Cir. 2009).

17. **Analysis.** Whether the court looks to the standard of review under Rule 60(b)(6) (plaintiffs must demonstrate "extraordinary circumstances") or Rule 60(d) (plaintiffs must demonstrate a need to prevent a "grave miscarriage of justice"), the record at bar is insufficient to reopen the judgment entered by this court in 2009. As discussed above, there has been no affirmative evidence presented that the administration of pentobarbital in Delaware's lethal injection protocol poses a substantial and objectively intolerable risk of harm. Therefore, the substitution of pentobarbital for sodium thiopental does not constitute a factual change which undermines the foundation of my prior ruling under Rule 60. Moreover, the evidence that plaintiffs want to develop through discovery is virtually the same evidence that has been developed through evidentiary hearings in other jurisdictions. As noted, it is unlikely that discovery will illuminate the complicated issue at bar; it, therefore, is unlikely that plaintiffs' concerns and questions will lead to any significant affirmative evidence sufficient to justify reopening judgment.

_____
United States District Judge